393 So.2d 606 (1981)
C.B. ARBOGAST, Jr., C.B. Arbogast Real Estate, Inc., and C.B. Arbogast, Jr., Patrick J. Ryan, Robert F. McRoberts, Jr., Eva Arbogast and Mary Ann Ryan, As Trustees of the Said Corporation, Appellants,
v.
Gerald E. BRYAN, Appellee.
No. 79-303.
District Court of Appeal of Florida, Fourth District.
February 4, 1981.
Rehearing Denied March 3, 1981.
*607 Martha C. Warner, Warner, Fox & Seeley, Chartered, Stuart, for appellants.
J. Stockton Bryan, Stuart, for appellee.
MOORE, Judge.
The appellee, Bryan, successfully sued the appellants for recovery of portions of real estate commissions allegedly withheld from him. Appellants seek reversal of the final judgment entered in favor of the appellee after a non-jury trial. We find that the appellee waived his right to payment and we reverse.
Bryan was employed as a real estate salesman from 1969 to January, 1975 by the broker, C.B. Arbogast Real Estate, Inc. The broker corporation was dissolved in July, 1975, approximately six months after the appellee had terminated his employment, and suit was not commenced until December, 1975. In his suit, the appellee contended that the broker wrongfully withheld portions of several real estate commissions which were due him. All of the commissions involved large real estate transactions between four sets of buyers and sellers.
Bryan's arrangement with the broker was apparently an oral one in which they agreed that all commissions earned through the procuring efforts of Bryan would be divided equally. The broker's ordinary business expenses were to be paid from its share of the commissions. During Bryan's employment, the broker retained the services of Patrick J. Ryan, a market analyst and consultant, whose function was to provide advice on techniques of getting sellers and buyers together on large real estate transactions. Ryan was paid a fee of 1% of the gross sales price of all consummated transactions. This fee was deducted from the total commission and the remainder was then divided equally. The trial court held that the payments to Ryan were corporate business expenses which were not the responsibility of Bryan and he entered the final judgment for those amounts. This appeal followed.
We find it unnecessary to determine whether portions of Ryan's fees were wrongfully withheld from Bryan's commissions because we find that the trial court erred in failing to determine that Bryan had waived his right to payment. At the time of, or shortly after, the closing of each transaction, Bryan received his share of the commissions. Because some of the transactions involved deferred payments, some of Bryan's commissions were deferred until actual payment was made. Nevertheless, Bryan was aware that the fees paid to Ryan caused a reduction in his commissions and he voiced no objection for over six years.
The doctrine of waiver is aptly defined in 22 Fla.Jur.2d, Estoppel & Waiver, §§ 86-97 and 89, as follows:
§ 86 Waiver is the intentional relinquishment of a known right, or the voluntary relinquishment of a known right, or conduct which warrants an inference of the relinquishment of a known right. It may be express or implied; and when a party waives a right under a contract he *608 cannot, without the consent of his adversary, reclaim it... .
Waiver is distinguishable from estoppel. Waiver operates to "estop" one from asserting that which he might otherwise have relied upon, but it is not a true estoppel. That kind of waiver which consists merely in renouncing some right, or in ratifying what one might repudiate is not estoppel, though it has been called such. Nevertheless, waiver, although it is not technically speaking an estoppel, may be affected by various acts and different courses of conduct which operate in the final analysis as an estoppel or at least a quasi-estoppel.
§ 87 A party may waive any rights to which he is legally entitled, whether guaranteed by the Constitution, conferred by statute, or secured by contract ... .
§ 89 The following are essential to a waiver: The existence at the time of the waiver of a right, privilege, advantage or benefit which may be waived; the actual or constructive knowledge thereof; and an intention to relinquish such right, privilege, advantage, or benefit.
Waiver may be express or implied. Although waiver does not arise from forbearance for a reasonable time, it may be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived... .

(Footnotes omitted; emphasis added)
Applying the foregoing criteria to the instant case, it is readily apparent that Bryan waived strict compliance with what he contends was the contractual agreement between himself and the broker.[1] The evidence indicates that he knew of the arrangement with Ryan as early as the latter part of 1969. When questioned about Ryan, Bryan stated that he had made no comment because he didn't want to start "rocking the boat". He further stated that he didn't object to Ryan because he didn't desire to jeopardize his employment with the broker. Thus, Bryan accepted less than what he considered to be the full commissions due him for a period of approximately six years without voicing any objection whatsoever. Having received approximately $250,000 during this period of time on the transactions involved in this litigation, it was not until after the corporate broker was dissolved that Bryan attempted to enforce his alleged rights under his agreement with the broker. By failing to object to the receipt of less than one-half of all commissions with full knowledge that he was allegedly entitled to one-half, Bryan relinquished his right to full payment of his full share of the commissions.
Had Bryan complained of the fee arrangement with Ryan in a timely manner, the broker would have had several available options. For example, the broker could have elected not to retain Ryan's services, or to discharge Bryan and hire a salesman amenable to the arrangement with Ryan, or it could have negotiated other arrangements between Bryan and Ryan. Instead, the broker continued to pay, and Bryan continued to accept, substantial commissions for real estate transactions, the consummation of which were partially brought about by Ryan's consultations and expert advice. Moreover, if Bryan had informed the broker of his demand for full payment of the commissions prior to the dissolution of the corporation, adequate provisions could have been made to satisfy those demands from the assets of the corporation. By not requesting additional payment until after the corporate dissolution, no corporate funds remained available to pay Bryan's claims. Thus, his dilatory demand for payment, if allowed to stand, would expose the former directors of the corporate broker to personal liability which they would not have had otherwise.
Where a party intentionally relinquishes a known right by failing to timely demand performance of the obligations appurtenant to that right, that party cannot expect to subsequently enforce his claim. Davis v. Davis, 123 So.2d 377 (Fla. 1st DCA 1960). The acts or conduct giving rise to *609 the defense of waiver need not be affirmative in nature. Rather, a waiver of one's rights can occur by failing to speak out in vindication of a claim when there is a duty to do so. Richards v. Dodge, 150 So.2d 477 (Fla. 2nd DCA 1963). Accordingly, we find that the failure of Bryan to timely speak out and voice his objection to the arrangement with Ryan constitutes a waiver of any rights he may have had against the corporate broker regarding his commissions on transactions in which Ryan was involved.
Bryan also contends that the payments to Ryan were against public policy because they amounted to splitting fees with a person not licensed to sell real estate, contrary to Section 475.41, Florida Statutes (1975). He argues that waiver cannot apply to transactions which are against public policy. This argument misses the mark for several reasons and we reject it.
In the first place, the issue was never properly raised in, or addressed by, the trial court. Secondly, Ryan never had personal contact, either directly or indirectly, with any buyer or seller. Furthermore, Bryan was a party to the transactions with Ryan and knew, or should have known, whether Ryan was a registered real estate salesman. Even assuming the payments to Ryan to be contrary to public policy, Bryan participated in them and deliberately failed to object in order to protect his own position. He now argues that he cannot be held to have waived his right to payment from Arbogast because Arbogast's payments to Ryan were illegal and void as against public policy. We disagree. Under the facts of this case, we do not believe the general rule that waiver does not apply to forbidden transactions is applicable. Courts will generally refuse judicial aid to all parties to such transactions. See, 17 Am.Jur.2d, Contracts, § 216. Moreover, we are concerned with Bryan's waiver of his rights against Arbogast, not the alleged illegality of the transaction between Arbogast and Ryan.
Accordingly, final judgment should have been entered for the defendants. We reverse and remand for entry of such a judgment.
REVERSED and REMANDED.
LETTS, C.J., and DOWNEY, J., concur.
NOTES
[1] The actual terms of the agreement are not clear from the record.