MAY, J.
A simple subrogation claim evolved into a confusion of issues and resulted in a directed verdict and consequent judgment for the defendant. The plaintiff, Gulf-stream Park Racing Association, appeals the final judgment and argues that the trial court erred in directing a verdict for the defendant Kessinger. We agree. Accordingly, we reverse and remand the case for reinstatement of the jury verdict.
On December 14, 1996, Claire Parisel, an exercise rider, was injured while walking a racehorse back from the track. She and her husband sued Gulfstream for negligence. Gulfstream filed a third-party complaint against the horse trainer, Kessinger, for contribution and contractual indemnity, which it later voluntarily dismissed. The jury found Gulfstream negligent and apportioned 70% against it and 30% against Kessinger.[1] Gulf-stream’s insurer paid $500,000 in satisfaction of the judgment.
Gulfstream then filed the present action against Kessinger for contractual indemnity based on a “stall agreement” between Gulfstream and Kessinger. The relevant provisions of the stall agreement provided:
6(B)(1) [Kessinger] hereby agrees to indemnify, hold harmless and defend Gulfstream ... from any claims, losses, liabilities or demands whatsoever, including claims for medical and hospital bills, resulting from or arising directly or indirectly from the acts or omissions of [Kessinger] ... from or out of or in connection with [Kessinger’s] activities at Gulfstream Park....
6(B)(2)(C) ... The maintenance by Gulfstream of insurance relating to any claims otherwise released and/or indemnified against hereby shall not affect the terms or interpretation of this application ....
Kessinger filed a motion for summary judgment and argued that because Gulf-stream’s insurer had paid the judgment, it had sustained no actual loss or damage and was therefore not entitled to indemnification. He also argued that the stall agreement was invalid and unenforceable. The trial court denied the motion.
As a result of the arguments made at the hearing, however, Gulfstream amended the style of its complaint to reflect that it was suing for the use and benefit of its insurer, TIG. It did not amend the allegations to expressly state a subrogation claim.[2] It continued to rely on the theory of contractual indemnification.
At trial, Gulfstream introduced a check showing that TIG paid $500,000 in satisfaction of the Parisel judgment. During *647 cross examination of the TIG’s representative by Kessinger’s attorney, the following exchange took place.
Q. Okay. And then the next column; What does Subro mean?
A. I am not familiar with that.
Q. Is that short for subrogation?
A. Yes.
Q. Okay. And no is checked; there’s an X for that question?
A. Right.
Kessinger moved for directed verdict and among other things argued that because TIG had checked “no” on the settlement check, it had waived its right to subrogation. The trial court reserved ruling and sent the case to the jury on the issues of negligence and apportionment between Gulfstream and Kessinger. The jury found Gulfstream was not exclusively negligent for Parisel’s injury, and apportioned the negligence equally between Gulfstream and Kessinger.
Post trial, the trial court granted Kes-singer’s motion for directed verdict. After deciding that the subrogation issue had been tried by consent, the court specifically found that
Gulfstream, having been fully indemnified by the insurer has no individual right of action against Kessinger, but could only proceed in its representative capacity. However, it is equally clear that the insurer, being the only real party in interest, has not pursued this action, but rather has waived its rights to subrogation by its conduct. Therefore Gulfstream cannot maintain this action for the “use and benefit of’ the insurance company. As such, no viable claim against Kessinger for indemnifieation has been established, and he is entitled to judgment as a matter of law.
Waiver is a factual issue to be determined by the finder of fact, in this case, the jury. Popular Bank of Fla. v. R.C. Asesores Financieros, C.A., 797 So.2d 614 (Fla. 3d DCA 2001). Yet, the issue was not submitted to the jury. Instead, the trial court assumed the role of seventh juror and made the factual finding. We hold that it erred in doing so and in granting the motion for directed verdict.
The power to direct a verdict should be cautiously exercised, and a motion for a directed verdict should never be granted unless the evidence is such that under no view which the jury might lawfully take of the evidence favorable to the adverse party could a verdict for the latter party be sustained.
Edwards v. Orkin Exterminating Co., 718 So.2d 881, 883 (Fla. 3d DCA 1998) (emphasis added) (quoting Burch v. Strange, 126 So.2d 898, 901 (Fla. 1st DCA 1961)). Under this standard, the evidence failed to support a directed verdict for Kessinger.
The only testimony on the issue of waiver came from an insurance agent who indicated that “subro” was short for subrogation. And, the check that was introduced contained a check mark in the “no” column next to “subro.” However, there was no explanation on what that meant. In short, the evidence was not such that under no view of the evidence could a verdict be rendered in favor of the adverse party. Kessinger simply did not establish a knowing, intelligent and voluntary waiver of TIG’s right to subrogation. Thus, Kes-singer’s motion for directed verdict should have been denied.[3]
*648 When reviewing an order granting a motion for directed verdict, the court must view the evidence in the light most favorable to the non-moving party. Ortlieb v. Butts, 849 So.2d 1165 (Fla. 4th DCA 2003); Collins v. Sch. Bd. of Broward County, 471 So.2d 560 (Fla. 4th DCA 1985). We have done so and conclude that the order granting a directed verdict and the resulting judgment must be reversed. The case is remanded for reinstatement of the jury verdict and proceedings consistent with this opinion.
STEVENSON and SHAHOOD, JJ., concur.

. Fabre v. Marin, 623 So.2d 1182 (Fla.1993).

. In fact, Gulfstream consistently sought to keep the issue of insurance from tainting any jury determination on liability. It filed a motion in limine to prevent reference to TIG as its insurer. It even postponed admitting the insurance policy into evidence until after the initial close of the evidence.

. The pleadings in this case no doubt contributed to the confusion of issues. The only reference to subrogation came in Gulf-stream’s last minute amendment in the style of the case. Nevertheless, the trial court found that the issues of subrogation and waiver had been tried by consent. Kessinger did not appeal that decision.