939 So.2d 1098 (2006)
Richard J. GOODWIN, Appellant,
v.
BLU MURRAY INSURANCE AGENCY, INC., Appellee.
Nos. 5D05-1357, 5D05-1648.
District Court of Appeal of Florida, Fifth District.
September 15, 2006.
Rehearing Denied October 16, 2006.
*1100 Richard C. Swank and Donald E. Christopher, of Litchford & Christopher, P.A., Orlando, for Appellant.
Marcia K. Lippincott, of Marcia K. Lippincott, P.A., Lake Mary, for Appellee.
THOMPSON, J.
Richard Goodwin sought unpaid insurance commissions earned as an agent with Blu Murray Insurance Agency, Inc. ("Blu Murray") before and after he terminated a twenty-year relationship with the agency. Goodwin claims the trial court erred in denying his motion for summary judgment as to renewal commissions and pre-termination commissions, ruling he waived his right to an accounting, and denying him attorney's fees as the prevailing party. We reverse.
Blu Murray compensated Goodwin on a commission-only basis for the sale of new and renewal policies based on a percentage of the policy premiums. Most of Goodwin's sales derived from Blue Cross and Blue Shield health insurance products marketed through Blu Murray, the general agent, which acted as an intermediary in processing policy applications and premium checks as well as the commissions. Blu Murray then paid a share of the commission to its individual agent.
After ten years with Blu Murray, Goodwin became concerned in 1992 about the stability of his position. Goodwin claimed that Edward Murray, Blu Murray's principal, assured him that someday he intended to allow Goodwin to take over sole ownership of the South Daytona office as a general agent. In October 1992, Blu Murray and Goodwin entered into a written Commission Agreement drafted by Blu Murray. The Commission Agreement provides, in pertinent part:
Renewals of policies written by the agent will be paid the agent or the agents estate as long as the total monthly renewal commissions payable to the agent equal at least $100 a month. Renewals due the agent must be paid as long as the agency or the agency assigns are collecting money from insurance companies. No sale of the agency, or change in ownership of management will alter this agreement.
* * *
The first year commissions may change at the discretion of the G.A., renewal percentages must be at least one-half of G.A. amount. FIRST YEAR COMMISSION SHOULD NOT EVER BE LESS THAN 1/2 OF GA COMM.
Over the first few years of Blu Murray's sale of Blue Cross products, the insurer paid a flat commission regardless of the size or value of the policy. However, in the late 80's or early 90's, Blue Cross began to pay commissions based on a percentage of a policy's first-year premium. After the change, Blu Murray, as general agent, received ten percent of the first-year premiums and paid half, or five percent, to its individual agent. The Commission Agreement memorialized this change.
Not long after Goodwin and Blu Murray entered into the Commission Agreement, however, Blue Cross increased to thirteen percent its first-year commission structure. Because Blu Murray manually redacted the commission the agency received on the commission statement each agent received, the individual agents were unaware of the commission increase. Blu *1101 Murray continued to pay them only 5%, rather than 6.5% of the first-year premium. Goodwin remained unaware of the shortage until the mid to late 90's, when Blu Murray converted to computerized commission statements. The employee responsible for their preparation failed to redact the amount Blue Cross paid Blu Murray. Goodwin discovered for the first time that Blu Murray was not paying him the amount due under their agreement. When he discovered this fact in 1998, Goodwin confronted Murray on three or four occasions, but Murray refused to increase Goodwin's share as their agreement required. In view of Murray's ownership promises and the successful insurance practice he had built with Blu Murray, Goodwin did not pursue the matter further at that time.
Their relationship continued until 1 September 2002 when Goodwin terminated his employment after Murray rejected the possibility that Goodwin would become an owner. Goodwin nevertheless expected to continue receiving commissions due under the Commission Agreement. Once Goodwin left, however, Blu Murray ceased payment of all first-year and renewal commissions.
Goodwin promptly filed a two-count complaint against Blu Murray for breach of contract and an accounting. He sought attorney's fees as to both counts. In count one, he sought attorney's fees under chapter 448, Florida Statutes (2002), as an action for lost wages. The court instructed Goodwin to file an amended complaint to plead alternative counts for breach of contract as an independent contractor and as an employee in counts one and two, respectively; he again sought an accounting in count three. Goodwin alleged an entitlement to attorney's fees in count one pursuant to section 448.08. He did not, however, seek attorney's fees under count two as an independent contractor.
The trial court granted Blu Murray's motion for summary judgment on count one, ruling that estoppel barred Goodwin from asserting he was an employee by virtue of his formation of a P.A. and holding himself out as its employee. Goodwin had formed the P.A. in 1989, a few years before executing the Commission Agreement in his individual capacity. The court's order also ruled that the statute of limitations barred claims that arose more than five years before he filed suit.
The court conducted a bench trial on the accounting. Goodwin asserted that Blu Murray's concealment of its gross commissions and the number and complexity of the calculations warranted an accounting. The trial court ruled that Goodwin had waived his right to an accounting by waiting nearly four years to bring suit after discovering the shortchange and denied the claim.
Goodwin subsequently sought leave to amend his complaint to assert a claim as an independent contractor for attorney's fees under section 448.08. Citing the recent case of Elder v. Islam, 869 So.2d 600 (Fla. 5th DCA 2004), he argued that the relevant inquiry is what constituted "wages," rather than what label may be used by the party seeking payment of the wages. The trial court, concluding that an independent contractor could not seek attorney's fees under section 448.08, denied the motion.
Before the jury trial on the remaining count for breach of contract, both parties brought cross motions for summary judgment on renewal commissions. The trial court granted both motions for summary judgment, ruling in part that Goodwin had a vested interest in pre-termination commissions. Relying, however, upon Barr v. Sun Life Assur. Co., 146 Fla. 55, 200 So. 240 (1941), the court ruled that Goodwin was not entitled to any post-termination *1102 renewal commissions. The trial court also ruled, as a matter of law, that Goodwin had waived any right to seek damages for the commission shortage.
Based upon the trial court's oral rulings on the respective motions for summary judgment, Goodwin believed that the issue of liability had been resolved. The trial court ruled that the contract was not ambiguous, Goodwin was not entitled to post-termination renewal commissions, but he was entitled to vested commissions for first-year policy sales and renewals prior to his termination. The parties stipulated to the amount of damages based on Goodwin's pre-termination commissions. The stipulation did not apply, however, to any other damages Goodwin sought in the past or might seek in the future upon appeal. The jury returned a verdict for Goodwin on the breach of contract, and the trial court entered a final judgment awarding Goodwin stipulated damages of $58,213.65.
Despite the court's earlier denial of Goodwin's motion for leave to amend, Goodwin filed a post-judgment motion for attorney's fees pursuant to section 448.08 and the recently amended Florida Rule of Civil Procedure 1.525 to preserve for appeal his claim to attorney's fees. The trial court denied his motion for fees, but awarded costs to Goodwin as the prevailing party. This appeal followed.
We first consider the summary judgment on renewal commissions. Goodwin argued that the agreement's plain and unambiguous language required that he or his estate receive renewal commissions for the policy's life regardless of his termination as long as the total monthly renewal commissions equal at least $100. Alternatively, Goodwin contended a jury must resolve any ambiguity. The agreement's language provided:
B. RENEWAL COMMISSIONS:

Those percentages as shown in the schedule of commissions which are percentages of the renewal premiums for the second year and through the life of the policy as the agency receives commissions on that policy.
Renewals of policies written by the agent will be paid the agent or the agents estate as long as the total monthly renewal commissions payable to the agent equal at least $100 a month.

Renewals due the agent must be paid as long as the agency or the agency assigns are collecting money from insurance companies. No sale of the agency, or change in ownership or management will alter this agreement.
(emphasis added).
The trial court erred. The existence of an ambiguity in a contract is a question of law. Centennial Mortgage, Inc. v. SG/SC, Ltd., 772 So.2d 564, 566 (Fla. 1st DCA 2000). To the extent any ambiguity exists in the interpretation of the contract, it will be strictly construed against the drafter. Tannen v. Equitable Life Ins. Co., 303 So.2d 352, 355 (Fla. 3d DCA 1974). We conclude that the contract provided for the payment of post-termination renewal commissions to Goodwin.
The Commission Agreement expressly states the agent or his estate will be paid renewal commissions for the life of the policy as long as the total monthly renewal commissions equal at least $100 per month and that renewal commissions due the agent must be paid as long as the agency or its assigns are collecting money from the insurance companies. No provision requires Goodwin to service the policies. The agreement does not expressly provide that Goodwin's right to premiums ceases upon his termination. We therefore reverse the judgment as to count two.
Second, though we conclude that section 448.08 attorney's fees do not apply *1103 to independent contractors, Skylink, Inc. v. Titus, 745 So.2d 377, 377-78 (Fla. 4th DCA 1999); Singer Prods., Inc. v. Tecnecol, Ltda., 625 So.2d 892 (Fla. 3d DCA 1993), whether an individual is an employee or an independent contractor is a question of fact for the jury. Font v. Stanley Steemer Int'l, Inc., 849 So.2d 1214, 1216 n. 2 (Fla. 5th DCA 2003). Florida courts have adopted several criteria to aid in making this determination: (1) the extent of the employer's control over the details of the work; (2) whether the person employed is engaged in a distinct occupation or business; (3) the kind of occupation involved, and whether the work is done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer supplies the instrumentalities, tools, and the place of work; (6) the length of time the person is employed; and (7) whether the work is part of the employer's regular business. Carroll v. Kencher, Inc., 491 So.2d 1311, 1312 (Fla. 4th DCA 1986).
The trial court declared that Goodwin was estopped from claiming he was an employee of Blu Murray because the record clearly reflected that Goodwin consistently acted as an independent contractor and he was an employee of his P.A.
Equitable estoppel must be applied with great caution, and the party raising estoppel must prove its elements by clear and convincing evidence. Watson Clinic, LLP v. Verzosa, 816 So.2d 832, 834 (Fla. 2d DCA 2002). The elements of estoppel are: (1) the party against whom estoppel is sought must have made a representation about a material fact that is contrary to a position it later asserts; (2) the party claiming estoppel must have relied on that representation; and (3) the party seeking estoppel must have changed his position to his detriment based on the representation and his reliance on it. Id. Estoppel rests on the premise that the party asserting the estoppel has acted in reliance upon the prior inconsistent conduct. Pelican Island Property Owners Ass'n, Inc. v. Murphy, 554 So.2d 1179, 1181 (Fla. 2d DCA 1989). The essence of estoppel is that a person should not be permitted to unfairly assert inconsistent positions, but estoppel will not lie unless the party seeking to assert it was misled. Id.
No estoppel is clearly present. Many facts in evidence could support a jury's determination that Goodwin was an employee regardless of his formation of the P.A. His status as an employee of his P.A. is not determinative of whether he was an employee of Blu Murray. Where there are varying inferences and conclusions which can be drawn from the facts, the issue of whether an individual is an employee or an independent contractor should be submitted to the jury. Carroll, 491 So.2d at 1313. Further, there is no evidence here of detrimental reliance. The court erred in utilizing summary judgment to apply estoppel to a disputed factual issue.
Accordingly, we reverse the trial court's dismissal of count one and, upon remand, direct that the jury make a finding whether Goodwin was an employee or an independent contractor. The jury's finding will establish his entitlement to attorney's fees and costs under section 448.08.
The third issue is the trial court's denial of Goodwin's summary judgment on count two for unpaid wages, an accounting in count three for pre-termination commission shortages over a period of years, and post-termination renewal and first-year commissions. The court summarily awarded Goodwin the first-year commissions and the pre-termination five percent renewal commissions, but denied him pre-termination *1104 renewal commission shortages based upon waiver and laches.
The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right. Zurstrassen v. Stonier, 786 So.2d 65, 70 (Fla. 4th DCA 2001). Waiver may be implied by conduct, but that conduct must make out a clear case. Fireman's Fund Ins. Co. v. Vogel, 195 So.2d 20, 24 (Fla. 2d DCA 1967). The burden of proving the affirmative defense of estoppel and waiver rests upon the party invoking it. Mercede v. Mercede Park Italian Restaurant, Inc., 392 So.2d 997, 998 (Fla. 4th DCA 1981). Summary judgment is particularly unsuitable where the facts and circumstances indicate a possibility of waiver. Scheibe v. Bank of America, N.A., 822 So.2d 575, 575-76 (Fla. 5th DCA 2002). Mere delay is insufficient to support a defense of waiver or estoppel. Mercede, 392 So.2d at 998; Air Prods. & Chem., Inc. v. Louisiana Land & Exploration Co., 867 F.2d 1376, 1380 (11th Cir.1989) (applying Florida law in holding no clear waiver shown after five-year delay); O'Brien v. O'Brien, 424 So.2d 970, 971 (Fla. 3d DCA 1983). The decision in Arbogast v. Bryan, 393 So.2d 606, 608 (Fla. 4th DCA 1981), is distinguishable because the broker waited six years to seek a commission against a corporation since dissolved. The former directors of the corporate broker were exposed to personal liability they would not have had otherwise.
The court erred in concluding that Goodwin's inaction demonstrated a clear-cut case of waiver of his rights under the Commission Agreement because waiver is a factual issue to be determined by the finder of fact, in this case, the jury. See Gulfstream Park Racing Ass'n, Inc. v. Kessinger, 874 So.2d 645, 647 (Fla. 4th DCA 2004); Bd. of County Commm'rs of Jackson County v. Int'l Union of Operating Engineers, Local 653, 620 So.2d 1062, 1065 (Fla. 1st DCA 1993). Goodwin never expressly waived his contract rights. Blu Murray contends that his delay constitutes waiver. Goodwin explained that he deferred action because of substantial promises later reneged by Murray. We remand for a jury to determine whether Goodwin waived his right to the commission shortages.
The court also erred in applying laches to bar Goodwin's recovery of renewal commission shortages. Section 95.11(6), Florida Statutes (2002), provides:
Laches shall bar any action unless it is commenced within the time provided for legal actions concerning the same subject matter regardless of lack of knowledge by the person sought to be held liable that the person alleging liability would assert his or her rights and whether the person sought to be held liable is injured or prejudiced by the delay. This subsection shall not affect application of laches at an earlier time in accordance with law.
See also Engle v. Acopian, 432 So.2d 113, 115-16 (Fla. 5th DCA 1983).
Thus, the court erred in denying Goodwin an accounting based on laches and estoppel. The elements of laches were not met. Like waiver, laches is also an affirmative defense. As such, the burden of proof is on the individual who asserts it, and it must be proved by very clear and positive evidence. Van Meter v. Kelsey, 91 So.2d 327, 332 (Fla.1956). Unlike waiver, laches requires the element of injury or prejudice to the defendant in the event relief is accorded to the plaintiff, or in the event the suit is not barred. Id. There is no showing that Blu Murray would suffer any prejudice by affording Goodwin the relief he seeks in the form of *1105 an accounting. Blu Murray's speculation that the IRS may scrutinize its business records is collateral to the events in question. The records are available; many of them are part of the present record on appeal. Laches may be applied before the statute of limitations expires only where strong equities, not present here, appear. Appalachian, Inc. v. Olson, 468 So.2d 266, 269 (Fla. 2d DCA 1985).
The equitable defenses of waiver and laches require clean hands, and, if Goodwin's allegations are true, Blu Murray's conduct does not demonstrate clean hands. The Fourth District in Epstein v. Epstein, 915 So.2d 1272, 1275 (Fla. 4th DCA 2005), aptly described the doctrine of equity:
Equity is a court of conscience; It demands fair dealing in all who seek relief, and requires decency, good faith, fairness, and justice. Equity cannot be invoked for selfish or ulterior purposes. . . . Where a litigant fails to meet such a standard equity will deny all relief, and if both parties are at fault, relief will be withheld from both.
The clean hands doctrine "applies not only to fraudulent and illegal transactions, but to any unrighteous, unconscientious, or oppressive conduct by one seeking equitable interference in his own behalf." . . . He who has acted in bad faith, resorted to trickery or deception, or been guilty of fraud, injustice, or unfairness will appeal in vain to a court of conscience, even though in his wrongdoing he may have kept himself strictly `within the law.'
Id. (citations omitted).
Accordingly, we reverse the trial court's summary judgments on counts one and two adverse to Goodwin and remand for a jury trial to determine the affirmative defense of waiver, Goodwin's damages, and his status as an employee or independent contractor. The jury's finding on his status will establish whether Goodwin is entitled to damages under either count one or count two, as well as any entitlement to section 448.08 attorney's fees and costs as an incident of prevailing on count one. We also reverse the judgment on count three and remand for an accounting.[1]
REVERSED and REMANDED with directions.
GRIFFIN and ORFINGER, JJ., concur.
NOTES
[1] Blu Murray asserted the defense of waiver to both of Goodwin's legal and equitable claims. Because the issues surrounding waiver are identical as to both claims, the legal claims must be tried first so as not to deprive Goodwin of his constitutional right to trial by jury. See Spring v. Ronel, 421 So.2d 46, 47 (Fla. 3d DCA 1982); Adams v. Citizens Bank of Brevard, 248 So.2d 682, 684 (Fla. 4th DCA 1971).