CONNER, J.
 

 Lower Fees, Inc. (“Lower Fees”) appeals the dismissal of its third amended complaint with prejudice. The issue presented by this appeal is whether a “no-reliance” clause in a purchase contract precludes a claim of fraud in the inducement as grounds for rescinding the contract. Although Appellee, Bankrate, Inc. (“Bank-rate”), contends the issue is a matter of first impression in Florida, we determine that our supreme court has already spoken on the issue and reversal is required.
 

 Lower Fees is a corporation that provided comprehensive closing cost information to consumers and real estate and mortgage professionals, as well as a unique listing service for real estate service providers. As part of its business, Lower Fees created an internet-based system called the “Lower Fees System” and sold memberships in the system to real estate service providers. The Lower Fees System was designed using a group of four software systems and programming languages collectively called “LAMP”.
 

 Bankrate entered into an asset purchase agreement with Lower Fees to purchase the Lower Fees System and other assets.
 
 *518
 
 In addition to a cash payment and assumption of certain liabilities, Bankrate hired Lower Fees’s president and promised to pay Lower Fees a portion of the net revenue from membership sales in the Lower Fees System over a five-year period. The parties contemplated that the Lower Fees System would be integrated and merged into the main computer operating system maintained by Bankrate. The asset purchase agreement was forty-seven pages in length with seventy-six pages of attachments and related agreements. The largest section of the agreement contained more than two hundred representations upon which the parties relied.
 
 [1]
 
 Both parties consider themselves “sophisticated” business entities, and both were represented by skilled attorneys in negotiating and preparing the agreement.
 

 At issue in this case is the effect of Section 7.17 of the asset purchase agreement, titled “Entire Agreement” but referred' to by the parties as the “no-reliance clause,” which states:
 

 This Agreement and the Ancillary Agreements constitute the entire agreement between the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings and negotiations, both written and oral, between the Parties with respect to the subject matter of this Agreement.
 
 No representation, inducement, promise, understanding, condition, or warranty not set forth in this Agreement has been made or relied upon by the Parties.
 
 None of the provisions of this Agreement and the Ancillary Agreements is intended to confer upon any Person other than the Parties to this Agreement any rights or remedies under the Terms of this Agreement.
 

 (emphasis added). Lower Fees contends the emphasized language is nothing more than a “merger and integration” clause; Bankrate contends the emphasized language is much more.
 

 During negotiations and prior to entering into the asset purchase agreement, Lower Fees became concerned about Bankrate’s experience with LAMP technology and Bankrate’s ability to develop and operate the LAMP-based Lower Fees System. A conference call was arranged between Lower Fees’s chief executive officer and Bankrate’s chief technology officer and senior software engineers so that Lower Fees could determine whether Bankrate had the experience and expertise with LAMP technology to successfully operate and integrate the Lower Fees System. Bankrate’s chief technology officer told Lower Fees’s chief executive officer that Bankrate had extensive experience with LAMP-based systems and Bankrate’s technology department was trained in and highly skilled in working on LAMP-based systems.
 

 After completing the purchase, Bank-rate’s chief executive officer admitted to Lower Fees’s former president that Bank-rate did not have any personnel capable of using LAMP technology and therefore memberships in the Lower Fees System could not be sold. When Bankrate tried to merge the Lower Fees System into its own non-LAMP based platform, the Lower Fees System was destroyed.
 

 Lower Fees filed suit against Bankrate and its chief executive officer. After amending its complaint several times, Lower Fees ultimately sought rescission of the asset purchase agreement on the grounds that Bankrate fraudulently in
 
 *519
 
 duced Lower Fees to enter into the agreement by its representations that Bankrate had the expertise to operate its LAMP-based Lower Fees System. Bankrate moved to dismiss the third amended complaint on several grounds, one of which was that a “no-reliance clause” in the contract precluded rescission. The trial court granted the motion to dismiss with prejudice, holding the “no-reliance clause” of the asset purchase agreement barred the fraudulent inducement claim.
 

 Appellate review of a trial court decision granting a motion to dismiss is
 
 de novo. Wallace v. Dean,
 
 3 So.3d 1035, 1045 (Fla.2009).
 

 Lower Fees argues that Section 7.17 of the asset purchase agreement does not bar its claim for rescission based on fraudulent inducement because (1) the asset purchase agreement in its entirety was procured by fraud; (2) the claimed misrepresentations do not concern the subject matter of the agreement; (3) the claimed misrepresentations are not expressly contradicted by the agreement; and (4) the “no-reliance clause” does not specifically bar fraud claims. Most of the Florida case law upon which Lower Fees relies in support of its arguments deals with what are commonly referred to as “merger and integration” clauses. However, in support of its last argument, Lower Fees relies on a supreme court case we find controlling. Although Bankrate contends the contract provision at issue is a “no-reliance” clause and there are no Florida cases addressing a “no-reliance” clause, our supreme court has declared one can avoid a fraudulent inducement claim only by contract language which specifically and explicitly negates the right to bring such a claim.
 

 As early as 1941, our supreme court held in
 
 Oceanic Villas, Inc. v. Godson,
 
 148 Fla. 454, 4 So.2d 689 (1941), that a fraudulent inducement claim cannot be defeated by a contractual agreement unless the contract specifically states a fraud claim is not sufficient to negate the contract. In
 
 Oceanic Villas,
 
 a lessee sought rescission of a 99-year lease on grounds the lessor induced the lessee to execute the lease by misrepresenting the gross earnings of the property. The lease contained a provision stating “no verbal agreements, stipulations, representations, exceptions or conditions whatsoever have been made or entered into in regard to the above described property which will in any way vary, contradict or impair the validity of this lease, or of any of the terms and conditions herein contained.”
 
 Id.
 
 at 690. The court held that the clause did not bar the fraudulent inducement claim because
 

 [i]f the lease was procured by fraud and misrepresentation as to a material fact, the truth or falsity of which was known only to the lessor (and it is so alleged in the bill of complaint), and which misrepresentations, if proved, would be sufficient basis for a decree of rescission, then such fraudulent misrepresentation vitiated every part of the lease contract and the Lessee was not bound by the above quoted clause.
 

 Id.
 
 Further, the court stated that interpreting the clause to hold that the lessee is bound by the fraud of the lessor “would be against the fundamental principles of law, equity, good morals, public policy and fair dealing.” The court went on to say:
 

 We recognize the rule to be that fraud in the procurement of a contract is ground for rescission and cancellation of any contract unless for consideration or expediency the parties agree that the contract ... may be made incontestable on account of fraud, or for any other reason.
 

 Id.
 
 (citations omitted). The court also interpreted the clause to be a “stipulation”
 
 *520
 
 that no fraud had been committed and not a provision to make the contract incontestable because of fraud.
 
 [2]
 

 Bankrate cites numerous authorities from other jurisdictions in an attempt to persuade us there is a distinction between a “merger and integration” clause and a “no-reliance” clause, and we should follow the precedents of other jurisdictions that a “no-reliance” clause precludes rescission based on fraud in the inducement. However, we conclude our supreme court has spoken clearly that no contract provision can preclude rescission on the basis of fraud in the inducement unless the contract provision explicitly states that fraud is not a ground for rescission.
 

 The facts of this case rather strongly suggest that there is some logic to the argument that allowing Lower Fees to proceed with its suit condones a fraud. When one-third of a lengthy written contract is a listing of over two hundred representations the parties relied upon in entering the contract and there is an explicit provision that
 
 “No representation, inducement, promise, understanding, condition, or warranty not set forth in this Agreement has been made or relied upon by the PaHies,”
 
 one can forcefully argue the party who seeks to use a representation that is not made in the contract as grounds to rescind the contract stated a lie when signing the contract. However, there is a countervailing logic to the position taken by our supreme court: the lies one tells to get a contract signed trumps the lie one tells when signing the contract itself.
 

 It may also appear troublesome that if Lower Fees felt it so important for Bank-rate to be knowledgeable and skilled in LAMP technology, a representation that Bankrate had such knowledge and skill could have easily been added to the list of over two hundred representations relied upon by the parties. Moreover, the asset purchase agreement could have easily specified that Bankrate had made no representations that it had expertise with LAMP-based systems or that Bankrate had made no guarantees that it would successfully integrate and operate the Lower Fees System. Such specific statements would have placed Lower Fees on notice whether it could or could not rely on the Bankrate chief technology officer’s assurances to Lower Fees that Bankrate’s technology staff could handle the operation of the Lower Fees System. A generic disclaimer is not sufficient to do that. It has been the law of this state for some time that a claim of fraud in the inducement will not be defeated by contract clauses. If Bankrate wanted to contractually avoid a fraud claim, it should have specifically stated that in the contract it signed.
 

 For the reasons stated, we reverse and remand the case for further proceedings.
 

 MAY, C.J., and TUTER, JACK B., JR., Associate Judge, concur.
 

 [1]
 

 . The representations were divided into two separate sections, one for each party. Pages 18-33 of the agreement listed the representations and warranties by Lower Fees, followed by two pages of representations and warranties by Bankrate.
 

 [2]
 

 . The supreme court stated, “We think there is clearly a distinction in the effect of a stipulation of a contract which recognizes that fraud may have been committed and stipulates that such fraud, if found to have been committed, should not vitiate the contract, and one in which the parties merely stipulate that no fraud has been committed and that neither party has relied upon the representations of the other party made prior to the execution of the contract."
 
 Id.
 
 at 691.