[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16784
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-22267-DLB


MULTIQUIMICA DOMINICANA, S.A.,
a Dominican Republic Corporation,

                                        Plaintiff - Appellee

versus

CHEMO INTERNATIONAL, INC.,
a Florida corporation,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 1, 2017)


Before ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

**I.**

This appeal comes before us on the issue of whether the district court committed clear error when it found that Defendant-Appellant Chemo International, Inc. ("Chemo"), waived its right to collect underpaid commissions owed to it by Plaintiff-Appellee Multiquimica Dominicana, S.A. ("Multiquimica").

Multiquimica, a Dominican Republic manufacturer of paint resins and emulsions, and Chemo, a Florida corporation, successfully did business together for many years beginning in 1995. During this time, Chemo held two roles. First, Chemo purchased various raw materials from Multiquimica. In this capacity, Chemo would submit a purchase order and was then required to pay for the goods delivered. Second, Chemo acted as a distributor for Multiquimica. Chemo acquired customers to purchase Multiquimica's products and for each of its sales on behalf of Multiquimica, Chemo earned a commission.[1]

Eventually, the relationship deteriorated, and in 2013, Multiquimica filed a lawsuit against Chemo. Multiquimica claimed Chemo owed it $403,786.80 for various unpaid goods.[2] Chemo did not file a counterclaim, but in its Answer, Chemo asserted the affirmative defense of offset. In this regard, Chemo claimed

---

[1] Chemo's commission rate varied throughout the parties' relationship. Although the commission rate was disputed at trial, the rate is irrelevant for the purposes of this appeal.

[2] Multiquimica originally sought $436,176.80, but the parties later agreed the amount should be reduced to $403,786.80.

2

that Multiquimica owed it money from both unpaid and underpaid commissions,[3] beginning in 2005 until the end of the parties' relationship in 2010.  Accordingly, Chemo sought to offset the amount owed it in commissions against the $403,786.80 Multiquimica claimed it was due.

Because the parties were unable to settle their disputes, the case proceeded to a three-day bench trial.  At trial, Multiquimica responded to Chemo's defense of offset by asserting that Chemo had waived its right to the underpaid commissions.[4] According to Multiquimica, Chemo cashed the underpaid checks without objection.  And it was not until years later that Chemo complained about the underpayments.  In the meantime, Chemo continued to work on behalf of Multiquimica for years.  Based on these circumstances, Multiquimica claimed Chemo waived its right to the balance of the commissions.[5]

Following trial, the district court entered its Findings of Fact and Conclusions of Law.  The district court concluded that Chemo had breached its

---

[3] The claim of unpaid commissions was based on amounts never paid by Multiquimica. In contrast, the claim of underpaid commissions was based on Chemo's allegation that, in certain instances, Multiquimica failed to pay the full commission due.

[4] Chemo's Answer did not require a response, so Multiquimica was permitted to assert waiver, for the first time, at trial.  *See* Fed. R. Civ. P. 12(b) ("If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim.").

[5] The evidence showed Chemo complained about the underpayments in mid-2009.  But the underpayments began in 2005, and the record is silent as to Chemo's alleged complaints from 2005 to 2009.

contract with Multiquimica and owed it $403,786.80 for unpaid goods. As to Chemo's claim for unpaid commissions, the district court found that Multiquimica owed Chemo $284,495.37. But as to the underpaid commissions, the district court found in favor of Multiquimica. The district court concluded that Chemo had waived its right to full payment when it accepted Multiquimica's checks without complaint. In the end, the district court concluded that Multiquimica was entitled to judgment on its breach-of-contract claim in the amount of $403,786.80, and Chemo was entitled to an offset for unpaid commissions in the amount of $284,495.37.

Chemo appeals only the district court's finding of waiver with respect to the underpaid commissions. After careful consideration, we affirm.

## II.

Following a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230 (11th Cir. 2009) (citation omitted). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citations omitted). If the district court's factual determination of the evidence is plausible in light of the record, we may not reverse that finding even if we would have weighed the evidence differently.

4

*Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).   So where two permissible views of the evidence can exist, a factfinder's choice between them cannot be clearly erroneous.   *Id.*; *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016).

This case came before the district court on the basis of the court's diversity jurisdiction.   As acknowledged by the district court and the parties, the waiver issue presented here is governed by Florida law.   *See Air Prods. and Chems., Inc. v. La. Land and Expl. Co.*, 867 F.2d 1376, 1379 (11th Cir. 1989).[6]

### III.

We first note that under Florida law, waiver is an issue of fact.   *See MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 851 (11th Cir. 2013) (citing *Rutig v. Lake Jem Land Co.*, 20 So. 2d 498 (Fla. 1945) ("The question of waiver is usually one of fact for consideration by a trial jury on issues properly defined."); *see also Leonardo v. State Farm Fire and Cas. Co.*, 675 So. 2d 176, 178-79 (Fla. Dist. Ct. App. 1996) (waiver is an issue that should be resolved on a case-by-case basis, by the trier of fact).   Rulings relating to waiver also involve equitable principles.   *MDS*, 720 F.3d at 853.   A trial judge's finding on the issue of

---

[6] Florida's choice-of-law rules require contract-performance disputes to be governed by the law of the contract's place of performance.   *Gov't Emps. Ins. Co. v. Grounds*, 332 So. 2d 13, 14-15 (Fla. 1976) (per curiam).   The place of performance is where the cause of action was brought, maintained, and defended.   *See id.* at 15.

waiver will be reversed only if no "competent, substantial evidence" supports it. *See Bolin v. State*, 793 So. 2d 894, 897 (Fla. 2001) (citing *Hill v. Ray Carter Auto Sales, Inc.*, 745 So. 2d 1136, 1138 (Fla. Dist. Ct. App. 1999)).

Florida law defines waiver as "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) (citation omitted). To establish waiver, a party must show (1) the existence at the time of the alleged waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of that right; and (3) the intention to relinquish that right. *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098, 1104 (Fla. Dist. Ct. App. 2006); *see also Air Prods. and Chems., Inc.*, 867 F.2d at 1379.

Florida law recognizes that waiver may be express or implied by conduct. *Id.* But in order for waiver to be implied by conduct, the acts, conduct, or circumstances must make out a clear case. *See Goodwin*, 939 So. 2d at 1104 (citing *Fireman's Fund Ins. Co. v. Vogel*, 195 So. 2d 20, 24 (Fla. Dist. Ct. App. 1967)); *MDS*, 720 F.3d at 852 (citation omitted). Further, Florida courts have recognized that waiver does not arise merely from "forbearance for a reasonable time." *See Fireman's Fund*, 195 So. 2d at 24. Waiver is an affirmative defense, so the party invoking the defense has the burden of proof. *Goodwin*, 939

6

So. 2d at 1104 (citation omitted).  We determine whether waiver is established by "examining only the actions and intent of the party charged with waiver, and not the party asserting the defense."  *Air Prods. and Chems., Inc.*, 867 F.2d at 1379 (citation omitted).

Here, Multiquimica invoked the affirmative defense of waiver, so it had the burden of proof to establish the defense.  With respect to underpaid commissions, the district court determined that Chemo had waived its claim.  Accordingly, the district court concluded that Chemo did not have a valid claim for offset for any underpaid commissions.  In support of its ruling, and having had the benefit of hearing testimony during a three-day trial, the district court made a factual finding that throughout their relationship, "Multiquimica paid commissions to Chemo and Chemo accepted and deposited payment of commissions without disputing the amounts paid at the time it deposited the checks."  The district court then determined that Chemo's deposit of commissions without any objection was an acceptance of the commissions and waiver of any dispute regarding the rate.  In support of its finding of waiver by Chemo, the district court relied on *CB Abrogast v. Bryan*, 393 So. 2d 606, 609 (Fla. Dist. Ct. App. 1981), and held, "A party cannot accept a commission rate and continue its work only to later complain that the reduction in commission was a breach of contract."

The district court did not abuse its discretion when it found that Chemo waived its claim to underpaid commissions. We therefore affirm. Here, the first two elements of waiver are not at issue—Chemo had a right to be paid commissions and was fully aware of that right. Rather, the crux of this appeal surrounds the third element of waiver—whether the district court reasonably concluded that Chemo had the intention to relinquish its right to be paid a full commission.

We acknowledge that under Florida law, mere delay is insufficient to support a claim of waiver. *See Air Prods. and Chems., Inc.*, 867 F.2d at 1380 (citing *O'Brien v. O'Brien*, 424 So. 2d 970, 971 (Fla. Dist. Ct. App. 1983)). Instead, to imply waiver from conduct, Multiquimica must show that Chemo's dilatory behavior amounts to more than just delay. We also acknowledge that waiver does not arise from forbearance for a reasonable time. To be sure, the evidence presented at trial could have been weighed in more than one way. But we find no error in the district court's conclusion because Multiquimica presented competent, substantial evidence that Chemo intended to waive its commissions.

To begin with, Multiquimica set forth evidence tending to show that Chemo continued to perform as if a contract were still intact. Despite the fact that Multiquimica allegedly breached its duty to fully pay Chemo's commissions, Chemo continued to do business with Multiquimica for years after the

8

underpayments began.  These actions tend to support a finding of waiver.  *See Am. Somax Ventures v. Touma*, 547 So. 2d 1266, 1268-69 (Fla. Dist. Ct. App. 1989).

Chemo also did not merely delay in lodging its complaint regarding the underpayments.  Rather, in addition, it accepted and cashed checks and continued its business relationship with Multiquimica without objection for years. Significantly, the evidence suggests that Chemo did not write Multiquimica to complain about underpayments of commissions until four years after the alleged underpayments began.  The first written complaint by Chemo was dated March 2009 and related to shipments made in 2005.  Based on this timeline, nearly four years passed between shipment and Chemo's objection.[7]

True, in a different case, we found no waiver where five years passed before the plaintiff complained about underpayments.  *Air Prods. and Chems., Inc.*, 867 F.2d at 1379-80.  But we did so because unlike here, the circumstances supported a finding of mere delay.  This case involves more than mere delay.  Instead, affirmative action supports waiver—the acceptance and receipt of checks, and the continuation of a business relationship without objection regarding the amounts paid.

---

[7] While we realize Chemo claims that it made verbal objections prior to this time, the district court was in the best position to make credibility determinations and apparently concluded such objections had not sufficiently been made.

9

As to Florida precedent, the intermediate courts of appeal have found reasonably timely objections to underpayment when objections were lodged within ten months, *see Mercede v. Mercede Park Italian Rest., Inc.*, 392 So. 2d 997 (Fla. Dist. Ct. App. 1981) (no waiver after ten months of forbearance), but have concluded that waiver occurred where a party accepted a reduced commission for six years before bringing suit. S*ee Colonial Penn Cmtys., Inc. v. Crosley*, 443 So. 2d 1030 (Fla. Dist. Ct. App. 1984) (waiver after six years of forbearance); *Abrogast*, 393 So. 2d at 606 (waiver after failing to object for six years).

Within that range, specific determinations of reasonable forbearance have been left as a question for the factfinder. *See Goodwin*, 939 So. 2d at 1104. As relevant here, at least one Florida intermediate court has concluded that a party's forbearance for four years presented a question of fact for the jury as to whether waiver had occurred. *Id.* at 1104. In remanding the case for a factual finding, the *Goodwin* Court implicitly acknowledged that forbearance for four years could constitute waiver. *Id.* Because here, Chemo arguably delayed for four years in objecting to the underpayments, we cannot say that the district court clearly erred in finding waiver.[8]

---

[8] The district court did not explicitly note the period of time that passed between the underpayment of commissions and Chemo's objection. But the evidence presented during the three-day trial demonstrates a significant delay.

10

We acknowledge that Chemo contests the timeframe at issue. It contends that because Multiquimica did not make payments for the 2005 shipments until 2007, Chemo actually voiced its objection in less than four years. But even assuming Chemo is correct, that still leaves approximately two years' worth of time that Chemo accepted checks and failed to object to Multiquimica's underpayments. Because Florida law is ambiguous about exactly what timeframe constitutes reasonable forbearance for the purposes of establishing waiver, we must affirm the district court's holding. Even if we were to disagree with the district court's determination that the length of Chemo's forbearance was unreasonable, under Florida law, we cannot say that the district court clearly erred.

In defense of its delay, Chemo asserts that it deposited the commission checks immediately in order to continue functioning as a business. But Chemo's argument cuts both ways. If Chemo was in urgent need of its commissions, that fact only underscores the potential unreasonableness of waiting two to four years to object to the underpayment. We do not suggest that Chemo was required to object contemporaneously to the underpayments to avoid a finding of waiver, but we find no error in the district court's determination that waiver occurred where two to four years had elapsed before Chemo voiced its objection.

**IV.**

For the foregoing reasons, we affirm the ruling of the district court.

11

**AFFIRMED.**