DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOEL D. UDELL,**
Appellant,

v.

**MAURY LORNE UDELL,** individually and as personal representative
of the **ESTATE OF EVELYN S. UDELL,**
Appellee.

No. 4D2023-1662

[November 27, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 50-2019-CP-004145-XXXX-SB.

Rebecca Mercier Vargas and Stephanie L. Serafin of Kreusler-Walsh, Vargas & Serafin, P.A., and David M. Garten of the Law Office of David M. Garten, West Palm Beach, for appellant.

Jack J. Aiello of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellee.

WARNER, J.

Appellant, Joel Udell, petitioned to reopen the estate of his deceased wife, Evelyn Udell ("the decedent"), to rescind the distribution of a wrongful death settlement to a trust, rather than to him outright. He appeals a final summary judgment denying his petition. The decedent's son, Maury Udell, as personal representative, contended that the petition was barred by an agreement which appellant had made with the trustees of decedent's nonmarital trust not to seek further distributions from the trust into which the proceeds of the wrongful death settlement had been paid. We conclude that this agreement did not preclude appellant's petition, which sought to reopen the estate because of fraud. We therefore reverse.

This case began with a tragic murder. Appellant's wife, and the mother of sons Maury and Harran Udell, was murdered by a deliveryman. An estate was opened with Maury as personal representative. Both sons are lawyers. Pursuant to section 768.20, Florida Statutes (2019), which

requires a wrongful death action to be brought by the personal representative for the benefit of all survivors, Maury, as the personal representative, brought suit, alleging claims for appellant's loss of consortium and any damages due to the estate. Because the sons were adults, no other survivor claims for noneconomic damages were presented, nor was a claim made for the decedent's lost earnings. The personal representative settled the claim for a very substantial sum. During the wrongful death proceeding and the estate proceeding, appellant was not represented by independent counsel.

The decedent's will contained provisions to divide the decedent's estate into a marital and non-marital portion. The marital portion was devised to appellant outright. The non-marital portion of the estate was to be held in trust for appellant's benefit, with the remainder to be distributed to the two sons and their children. The non-marital trust allowed for income to be paid to appellant at the trustees' discretion.

Once the wrongful death action was complete, the court approved the settlement, and the estate was closed with the settlement funds paid into the *non-marital* trust controlled by the trustees, Maury and Harran. Through the trust, appellant was paid a monthly sum.

Unfortunately, appellant had a falling out with his sons over his desire to donate money to a library in his wife's name. He retained an attorney to assist him in securing additional funds from the trust. To resolve appellant's claims, the parties entered into a settlement agreement known as the "Private Agreement Among Trust Beneficiaries to Trust Administration" ("the Private Agreement"). In it, the trustees and appellant agreed that appellant would receive a substantially increased monthly amount from the trust. Appellant also agreed that he waived the right to receive any other distributions from the trust.

Eight months after the Private Agreement had been executed, appellant petitioned to reopen the estate, claiming that Maury, individually and as personal representative, committed fraud or bad faith in connection with the wrongful death settlement by withholding material information about his rights as the surviving spouse—information that Maury had a duty to disclose. Appellant also alleged that Harran had not advised him of his rights as the surviving spouse. Appellant stated that he had relied on his sons to assist him in recovering his share of the settlement proceeds. He alleged that Maury, as personal representative, had been responsible for allocating the settlement proceeds among the survivors, and Maury deliberately, fraudulently, and in bad faith improperly acquired an advantage by transferring all the settlement proceeds to the non-marital

2

trust—the portion of the trust in which Maury and Harran and their children were the residuary beneficiaries, thus personally benefitting them.

Additionally, in the motion to reopen, appellant sought to have his waiver of accounting and discharge set aside. He moved to rescind the transfer of the wrongful death settlement monies into the trust and to pursue recovery of his loss of consortium claim, which he alleged to be in the amount of eight million dollars.

Maury responded and asserted affirmative defenses, including that appellant had settled and fully released his claims pursuant to waivers and consents filed in the probate administration as well as in the Private Agreement. Maury then moved for summary judgment based upon the Private Agreement, arguing that appellant had "waived any right to any further distribution under the Trust by the plain and unambiguous language in the Private Agreement[.]"

Appellant responded that the Private Agreement dealt with the trust, not the estate, and argued that discovery was outstanding. Further, appellant stated that he had no actual or constructive knowledge of his individual right to the wrongful death proceeds, nor had he signed any release of Maury or Harran for fraudulent conduct. Appellant filed a lengthy affidavit in opposition to Maury's summary judgment motion, establishing appellant's lack of knowledge as to his rights in the wrongful death proceeding and his total reliance on his sons to act for his benefit. Appellant testified that there was no agreement existed as to how the settlement proceeds were to be distributed, and he was not consulted. He said:

> Had I known that I was entitled to 100% of the net settlement proceeds from the wrongful death case, I would not have signed the Agreement. Why would I agree to limit my distributions from the Trust and sign an irrevocable exercising my power of appointment in favor of Maury and Harran had I known that I was entitled to 100% of the net settlement proceeds? I would not!

Despite the affidavit, the trial court granted the motion for summary judgment, finding that appellant had waived any right to further distribution under the trust based on the parties' Private Agreement. This appeal follows.

## Analysis

The entry of summary judgment is reviewed de novo. *Gromann v. Avatar Prop. & Cas. Ins. Co.*, 345 So. 3d 298, 300 (Fla. 4th DCA 2022); *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).

Florida permits "the reopening of an estate after the discharge of the personal representative where there were procedural irregularities or facts constituting fraud or bad faith." *Carraway v. Carraway*, 883 So. 2d 834, 835 (Fla. 5th DCA 2004); *see also Sims v. Barnard*, 257 So. 3d 630, 631–32 (Fla. 1st DCA 2018) (noting the statutory bar will not be applied to a suit for fraud by concealment). "[A]n estate which has been closed can be reopened for the type of intentional misconduct which amounts to fraud." *In re Estate of Clibbon*, 735 So. 2d 487, 488 (Fla. 4th DCA 1998). "[F]raud is recognized as justification for reopening an estate, even after an order for discharge has been entered." *Dean v. Bentley*, 848 So. 2d 487, 489 (Fla. 5th DCA 2003). Further, "[i]n any transaction with a beneficiary, a fiduciary has an obligation to make full disclosure to the beneficiary of all material facts." *First Union Nat'l Bank v. Turney*, 824 So. 2d 172, 188 (Fla. 1st DCA 2001). Breaches of this duty of disclosure have been held to be fraud. *Id.* at 188–89 (citing *Donahue v. Davis*, 68 So. 2d 163, 171 (Fla. 1953)).

Appellant sought to reopen the estate, alleging fraudulent conduct of the personal representative in failing to disclose to appellant his individual right to the wrongful death settlement proceeds. He sought to recover the settlement proceeds from the trust, so that he could receive his entitled proceeds, as he alleged the settlement had been based completely upon his loss of consortium claim. The loss of consortium claim, although required to be brought by the personal representative of the estate, was not a claim *of the estate*. Thus, any recovery based upon the claim was not an estate asset to be distributed into the trust created by the decedent's will.

Here, the trial court found that the estate could not be reopened for fraud, because appellant had waived any right to further distribution *from the trust* in the Private Agreement. But appellant was not seeking distributions from the trust. He was seeking to rescind the distribution *to the trust* from the settlement. The Private Agreement was not addressed to the estate; rather it was addressed to the trust. Thus, the Private Agreement does not control this claim.

4

Moreover, even if the Private Agreement should be considered, we conclude that it did not waive appellant's claim of fraud or prevent the rescission of the payment of settlement proceeds to the trust. "Waiver is the intentional relinquishment of a known right, or the voluntary relinquishment of a known right, or conduct which warrants an inference of the relinquishment of a known right." *Arbogast v. Bryan*, 393 So. 2d 606, 607 (Fla. 4th DCA 1981). Waiver "may be express or implied; and when a party waives a right under a contract he cannot, without the consent of his adversary, reclaim it." *Id.* at 607–08.

"[O]ur supreme court has spoken clearly that no contract provision can preclude rescission on the basis of fraud in the inducement unless the contract provision explicitly states that fraud is not a ground for rescission." *Mantilla v. Fabian*, 284 So. 3d 575, 575 (Fla. 4th DCA 2019) (per curiam) (alteration in original) (quoting *Lower Fees, Inc. v. Bankrate, Inc.*, 74 So. 3d 517, 520 (Fla. 4th DCA 2011)). If a party "want[s] to contractually avoid a fraud claim, it should [] specifically state[] that in the contract[.]" *Lower Fees, Inc.*, 74 So. 3d at 520. "Though a party may waive any right to which he is legally entitled, [including a right] secured by contract . . . such a proposition does not apply where there is an allegation of fraud." *D & M Jupiter, Inc. v. Friedopfer*, 853 So. 2d 485, 488 (Fla. 4th DCA 2003). Applying this law to the Private Agreement and the waivers in the estate before it, all signed by appellant, none contained a specific release or waiver for fraud.

We distinguish *Arbogast*, upon which the trial court relied. In *Arbogast*, we found the failure of a salesman to voice an objection for six years to a broker's fee arrangement with a market consultant constituted a waiver of any rights which the salesman may have had against the broker regarding his commissions, even if the broker's payments to the market consultant were against public policy. 393 So. 2d at 608–09. The evidence showed that the salesman "knew of the arrangement" and accepted less than what he had considered to be full commissions for approximately six years. *Id.* at 608. We held that a waiver could occur without acts that are affirmative in nature and failing to speak out when there is a duty to do so is a waiver. *Id.* at 608–09.

In contrast to *Arbogast*, appellant alleged that he did not know of his rights to the wrongful death settlement proceeds. Moreover, appellant acted quickly after discovering his right to the settlement proceeds, whereas in *Arbogast* the salesman waited six years to make his claim.

Maury argues that the petition's fraud allegations are weak and should permit this court to affirm the trial court's denial of the motion to reopen

the estate on the tipsy coachman principle, citing to *Padgett v. Estate of Padgett*, 318 So. 2d 484 (Fla. 1st DCA 1975). There, the court held that the statutory period to petition for revocation was binding "in the absence of such *strong* factual allegations of fraud, overreaching or mistake as to reasonably require investigation by the court." *Id.* at 485–86 (emphasis added). But "[s]uch factual allegations" were not present in that case, and the appellate court affirmed. *Id.* at 486. In this case, however, the trial court made no findings with respect to fraud which *was* alleged in the motion to reopen. Indeed, the trial court had denied appellant the right to conduct discovery on this issue.[1] Thus, no ground exists upon which to affirm based upon tipsy coachman.

### Conclusion

In summary, the Private Agreement did not address appellant's right to seek rescission of the distribution of the wrongful death settlement proceeds to the trust. In addition, neither the Private Agreement nor the estate waivers included a specific waiver of fraud, which is required to make such waivers preclusive of appellant's right to seek reopening of the estate to challenge the settlement distribution on that basis. We reverse and remand for further proceedings.

*Reversed and remanded.*

GROSS and CIKLIN, JJ., concur.

*    *    *

**Not final until disposition of timely filed motion for rehearing.**

---

[1] As we reverse the final summary judgment, we do not address the denial of discovery.