GROSS, J.
We reverse an order refusing to set aside a foreclosure sale where a $500,000 property sold for $1,000.
Long Beach Mortgage Corporation held a mortgage on certain real property. The property went into foreclosure. After negotiating with other mortgagees over priority, Long Beach secured a final judgment in foreclosure giving it a credit bid of $716,139.60 plus interest and setting a foreclosure sale for May 22, 2007 at 10:00 a.m.
Two law firms represented Long Beach in the foreclosure litigation — the Law Offices of Marshall Watson and Fox, Wack-een, Dungey, et al. Long Beach’s title insurer retained Fox, Wackeen to litigate the priority of various mortgages. Although Marshall Watson controlled the foreclosure part of the case, Fox, Wackeen handled the notice of the sale and its publication.
At the foreclosure sale, no one placed a bid on behalf of Long Beach. The property was sold to Aqua-Terra, Inc., a disinterested third party, on its bid of $1,000. The property was appraised at $500,000.
On May 25, 2007, Long Beach moved to set aside the sale to Aqua Terra on the grounds of its inadvertence, mistake, or accident or that of its agents in failing to attend the sale. At a hearing on the motion, Long Beach presented a scenario of miscommunications and mishaps.
First, the posture of the case was different than the usual foreclosure. Typically, Marshall Watson had designated people to handle sales packages; they obtained the final judgment, ordered the sales agent to appear and provided bidding instructions to the sales agent at the sale. Generally, the agent was authorized to bid up to the judgment amount, or less if warranted by the economics of the situation.
In this case, Maxine Housen was the Marshall Watson employee handling the sale package for the foreclosure sale. She reviewed the file and noticed that Long Beach was not listed as a plaintiff in copies of court documents. As a result, Housen was unsure how to proceed, since the firm did not have bidding funds from the client on hand. She contacted an attorney in the firm, Laura Carbo, who explained that Long Beach had been initially named as a defendant junior mortgagee.
On May 21, 2007, the day before the sale, Housen advised the sales agent to bid at the sale on behalf of Long Beach. The agent confirmed that she would attend the sale. Following normal practice in Martin County, the sales agent went to the office of The Stuart News to obtain the original proof of publication of sale, but discovered that no original proof of publication was available. Since she could not find the proof of publication at the newspaper office, the sales agent believed that the sale would not proceed.
At 5:00 p.m. on May 21, the Fox, Wack-een firm faxed attorney Carbo the proof of publication of sale. Carbo received the fax on May 22 at 9:00 a.m. Carbo referred the *613 faxed copy to Housen, but Housen did not arrive at the office until 10:00 a.m. Housen immediately began to prepare a sales package for the agent to attend the sale, which she mistakenly believed was scheduled for 11:00 a.m., the time for foreclosure sales in many locales. Housen was unfamiliar with Martin County procedures.
A Fox, Wackeen attorney delivered the original proof of publication to the Martin County clerk of the court the morning of the sale. The clerk conducted the sale at 10:00 a.m. and Aqua-Terra made the only bid. Later that morning, the sales agent contacted Housen and told her that the sale had occurred. The agent was present at the sale, but did not participate because she did not have bidding instructions.
At the hearing, Aqua-Terra contended it was an innocent purchaser, but conceded that it had paid an inadequate price for the property. Aqua-Terra emphasized that Long Beach’s sales agent was present at the sale, but failed to bid. It also argued that the attorney from Fox, Wackeen who attended the sale, corrected the clerk about the amount of the judgment prior to the commencement of bidding. Aqua-Terra took the position that Long Beach and its attorneys committed a unilateral mistake through a failure of “internal procedures.”
The trial judge found that the problem at the sale was “not the fault of the purchaser.” The trial judge “exercised [his] discretion” and denied the motion to vacate.
“Whether the complaining party has made the showing necessary to set aside a [foreclosure] sale is a discretionary decision by the trial court, which may be reversed only when the court has grossly abused its discretion.” United Cos. Lending Corp. v. Abercrombie, 713 So.2d 1017, 1018 (Fla. 2d DCA 1998). In Arlt v. Buchanan, 190 So.2d 575 (Fla.1966), our supreme court summarized 75 years of case law:
The general rule is, of course, that standing alone mere inadequacy of price is not a ground for setting aside a judicial sale. But where the inadequacy is gross and is shown to result from any mistake, accident, surprise, fraud, misconduct or irregularity upon the part of either the purchaser or other person connected with the sale, with resulting injustice to the complaining party, equity will act to prevent the wrong result.
Id. at 577. Arlt is consistent with the view that an equity judge considering whether to set aside a foreclosure sale “has a large discretion which will only be interfered with by the appellate court in a clear case of injustice.” Mitchell v. Mason, 75 Fla. 679, 682, 79 So. 163, 164 (1918).
The policy behind this standard of review is to ensure a competitive market in the foreclosure sale process. “Bidders and buyers” at such sales “usually bid and buy to make a profit.” City of Sanford v. Ashton, 131 Fla. 759, 763, 179 So. 765, 767 (1938). To establish a precedent that encourages the easy setting aside of foreclosure sales “would be to destroy the incentive which prompts bidding at [a] sale and thereby work a hardship on both debtors and creditors.” Id.
One line of Florida supreme court cases preceding Arlt took the view that where there was a gross inadequacy in price, an irregularity in the process of the foreclosure sale could be a basis for setting the sale aside. For example, Lawyers’ Cooperative Publishing Company v. Bennett, 34 Fla. 302, 308-310, 16 So. 185, 187-88 (1894), held that a mistake by the sheriff conducting a sale, which prevented a judgment creditor from attending it, justified setting the sale aside. In Macfarlane v. Macfarlane, 50 Fla. 570, 580, 39 So. 995, *614 998 (1905), the notice of sale was published in a way that prevented “a fair sale of the property,” creating “an element of unfairness in the method of advertising and selling the property, which, coupled with the inadequate price, demand[ed] that the order confirming the sale ... be reversed.” Cf. Ruff v. Guaranty Title & Trust Co., 99 Fla. 197, 126 So. 383 (1930) (court refused to set aside foreclosure sale where the “record reveal[ed] no irregularity in connection with the sale”); Mitchell, 79 So. at 165 (affirming order refusing to set aside sale where irregularity in sale procedure caused by the party attacking the sale).
In addition to those cases involving a problem with the mechanics of a foreclosure sale, the supreme court also approved the setting aside of a sale where the “mistake” or “accident” that occurred was a unilateral one, the fault of the person seeking to set aside the sale. In Florida Fertilizer Manufacturing Company v. Hodge, 64 Fla. 275, 60 So. 127 (1912), a mortgagor “with little education and no knowledge of legal proceedings” went to a lawyer for advice after “learning of the institution of foreclosure proceedings” on his farm. Id. at 128. He “understood the attorney to say that no further proceedings would be taken, and that it would not be necessary for [the mortgagor] to appear in court in the cause.” Id. Without the mortgagor’s knowledge, his property was sold at a foreclosure sale for $110, when it was reasonably worth “$800 to $1,000.” Id. The supreme court affirmed an order vacating confirmation of the sale, finding that it was “inequitable under the circumstances” for the buyer at the foreclosure sale to take advantage of a “grossly inadequate price.” As the law has developed over time, “even a unilateral mistake which results in a grossly inadequate price is legally sufficient to invoke the trial court’s discretion to consider setting the sale aside.” Abercrombie, 713 So.2d at 1018; see Fernandez v. Suburban Coastal Corp., 489 So.2d 70 (Fla. 4th DCA 1986); Van Delinder v. Albion Realty & Mortgage, Inc., 287 So.2d 352 (Fla. 3d DCA 1973).
In two decisions factually similar to this case, this court affirmed orders setting aside foreclosure sales. Fernandez involved a mortgagee’s agent who failed to attend a sale, resulting in the sale of property for $100, an “unconscionably inadequate” price given the $54,300 value of the property. 489 So.2d at 71. The agent’s failure to attend the sale, caused by a calendaring error, “resulted in the inadequate bid price.” Id. In Alberts v. Federal Home Loan Mortgage Corp., 673 So.2d 158, 159 (Fla. 4th DCA 1996), “a mistake in communication” between the lender’s counsel and the sale agent resulted in the agent making too low a bid, which the buyer at the sale trumped by bidding $5 more. The property was sold for $19,000; the amount of the foreclosure judgment was $118,955, and the buyers knew that the residence was worth at least $100,000. Id. at 159.
If Fernandez and Alberts demonstrate the permissible exercise of judicial discretion, we find that the trial court in this case grossly abused its discretion in failing to set aside the foreclosure sale. This was a case where equity should have acted “to prevent the wrong result,” to remedy a “clear case of injustice.” Arlt, 190 So.2d at 577; Mitchell, 79 So. at 164. As in Fernandez and Alberts, Long Beach was the innocent victim of the mistakes of its attorneys and agents. The property was sold for $1,000, .02% of its value. Long Beach acted promptly to set aside the sale by filing its motion three days later. The purpose of the law in this area is to promote the viability of the foreclosure sale process, to encourage good faith offers for foreclosed properties, not to protect outra *615 geous windfalls to buyers who make de minimis bids. Finally, judicial economy favors resolving a case so that a fair sale price is realized in this proceeding, instead of inviting a second lawsuit to allocate the losses between Long Beach, Marshall Watson, and Fox, Wackeen.
We distinguish this case from John Crescent, Inc. v. Schwartz, 382 So.2d 383 (Fla. 4th DCA 1980), where the defendants ignored foreclosure suit papers, leading to a default final judgment and foreclosure sale that the defendants made no provisions to attend. It is one thing for a mistake in communications to result in the failure of the mortgagee’s agent to attend a sale, and another for properly served parties to ignore a lawsuit altogether. Nor is this case like Action Realty and Investments, Inc. v. Grandison, 930 So.2d 674 (Fla. 4th DCA 2006) and Esque Real Estate Holdings, Inc. v. C.H. Consulting, Ltd., 940 So.2d 1185 (Fla. 4th DCA 2006), which both involved no irregularity connected with the foreclosure sale.
We also distinguish this case from Wells Fargo Credit Corp. v. Martin, 605 So.2d 531 (Fla. 2d DCA 1992). There the second district affirmed an order denying a motion to set aside a sale where the mortgagor’s agent misread her bidding instructions, leading her to bid $15,500 instead of $115,500, the tax appraised value of the property after deducting the homestead exemption. The property was sold for $20,000. Such a sales price is not as unconscionably inadequate as the $100/$54, 300 disparity in Fernandez or the $1,000/ $500,000 difference in this case.

Reversed.

STEVENSON and MAY, JJ., concur.