**In re Shirley Jean KING, Debtor.**

**Deborah C. Menotte, Trustee in Bankruptcy for Shirley Jean King, Plaintiff,**

**v.**

**Shirley Jean King and Homer King, Defendants.**

**Bankruptcy No. 08–17501–EPK. Adversary No. 10–03684–EPK.**

United States Bankruptcy Court, S.D. Florida, West Palm Beach Division.

Dec. 22, 2011.

**48.** *In re Welsh,* 440 B.R. at 849–50 (citing *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 252–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

G. Steven Fender, Marla B. Neufeld, Michael R. Bakst, Esq., Rilyn A. Carnahan, West Palm Beach, FL, for Plaintiff.

Shirley Jean King, pro se.

Kevin M. Lamontagne, Boynton Beach, FL, for Defendants.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ERIK P. KIMBALL, Bankruptcy Judge.

THIS CAUSE came before the Court upon the *Plaintiff's Motion for Partial Summary Judgment against Defendants, Shirley Jean King and Homer King* [ECF No. 56] (the "Trustee Motion") filed by Deborah C. Menotte, Trustee in Bankruptcy for Shirley Jean King (the "Trustee"), and the *Cross–Motion of Defendant/Counterplaintiff, Homer King, for Summary Judgment in His Favor and against Plaintiff/Counter defendant, Deborah C. Menotte, Trustee in Bankruptcy for Shirley Jean King, on Plaintiff's Amended Complaint and on Count I of His Counterclaim* [ECF No. 163] (the "King Motion") filed by defendant Homer King ("Mr. King"). The Court has reviewed the record and is otherwise fully advised in the premises.

For the reasons stated below, the Court denies the Trustee Motion in full and grants the King Motion in part. The Court will enter partial judgment in favor of Mr. King (a) setting aside the execution sale of real property formerly titled in the name of Mr. King, (b) quieting title to such real property in Mr. King subject to all liens, encumbrances, claims and interests that may attach thereto under applicable law including, without limitation, the lien of the Trustee's judgment entered in a prior adversary proceeding, (c) directing the Trustee to execute and deliver a quit-claim deed conveying to Mr. King, without representation or warranty of any kind, all title held by the Trustee in the real property, and (d) terminating the preliminary injunction issued in this adversary proceeding. Because the subject real property was property of the estate in the Debtor's case during the period of time relevant to the *Trustee's Amended Verified Complaint for Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362(a)(3) and for Injunctive Relief* [ECF No. 76] (the "Amended Complaint"), the Court denies the King Motion to the extent it requests summary judgment in Mr. King's favor on the Trustee's claim that Mr. King willfully violated the automatic stay.

**Background**

In this adversary proceeding, the Trustee seeks damages for willful violation of the automatic stay pursuant to sections[1] 362(a)(3), 362(k) and 105 and the inherent power of the bankruptcy court, and injunctive relief against Mr. King and his wife, Shirley Jean King (the "Debtor" and, together with Mr. King, the "Defendants"). Count I of the Amended Complaint seeks an order of the Court determining that the Defendants violated the automatic stay by interfering with the Trustee's attempts to secure certain real property, previously titled in the name of Mr. King, to which the Trustee obtained title via execution sale. Count I seeks compensatory damages, punitive damages, costs and reasonable attorneys' fees incurred by the Trustee as a result of the Defendants' alleged willful violation of the stay. Count II of the Amended Complaint seeks injunctive relief against the Defendants, directing them not to interfere with the Trustee's securing and administering the subject real property.

On April 4, 2011, Mr. King filed his *Answer and Affirmative Defenses of Defendant, Homer King, to Plaintiff's Amended Complaint and Counterclaim against Deborah C. Menotte, Trustee in Bankruptcy for Shirley Jean King* [ECF Nos. 98 and 99]. Count I of Mr. King's counterclaim is an action to set aside the execution sale of the real property and to quiet title in him. Count II is an action to set aside the *Consent Final Judgment* [ECF No. 104, Adv. Proc. No. 09–01592–EPK; the "Consent Final Judgment"] against the Debtor and Mr. King, entered by this Court in Adversary Proceeding number 09–01592–EPK (the "2009 Adversary Proceeding"). The Consent Final Judgment is the judgment that resulted in the execution sale at issue in the present adversary proceeding.

The Trustee seeks summary judgment on Count II of the Amended Complaint. Although the Trustee did not seek summary judgment on her request for damages for willful violation of the stay under Count I of the Amended Complaint, Mr. King requested summary judgment in his favor on that count. Mr. King also requests summary judgment on Count I of his counterclaim, seeking an order of this

---

1. Unless otherwise indicated, the terms "section" and "sections" refer to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

Court setting aside the execution sale of the real property, quieting title to the real property in Mr. King, and setting aside a preliminary injunction previously entered in this adversary proceeding that prohibits the Defendants from interfering with the Trustee's securing and administering the real property. Mr. King argues that the real property at issue in this case has always belonged to Mr. King—that it never became part of the Debtor's bankruptcy estate—and thus Mr. King could not have violated the automatic stay. Count II of Mr. King's counterclaim is not addressed in the motions for summary judgment now before the Court.

The above-captioned adversary proceeding is, in part, an attempt to collect on the Consent Final Judgment entered by this Court in the 2009 Adversary Proceeding. It is useful here to recount the history of litigation between the Trustee and the Defendants in the 2009 Adversary Proceeding as well as in the present adversary proceeding.

The Trustee filed the 2009 Adversary Proceeding on June 3, 2009. In her complaint (the "2009 Complaint"), the Trustee sought to recover $33,422.66 from the Defendants. The Trustee alleged that this sum represented funds the Debtor received in satisfaction of a pre-petition claim under her homeowners' insurance policy. The Trustee alleged that the Debtor received such funds in the form of a check soon after filing her bankruptcy petition and immediately deposited the check in a joint bank account held in the names of the Debtor and Mr. King. The Trustee alleged that, in spite of making this deposit only days prior to the Debtor's meeting of creditors pursuant to section 341, the Debtor testified under oath at such meeting that she had not yet recovered on her insurance claim. The Trustee filed with the 2009 Complaint her *Emergency Ex-*

*Parte Verified Motion for Entry of Temporary Restraining Order and Scheduling Hearing to Consider Preliminary Injunction* [ECF No. 2, Adv. No. 09–01592–EPK].

After granting a temporary restraining order on June 10, 2009, the Court held a hearing on June 16, 2009 to consider the Trustee's request for a preliminary injunction in the 2009 Adversary Proceeding. On June 17, 2009, this Court entered its *Order Imposing Preliminary Injunction on Shirley Jean King, Homer King, and JP Morgan Chase & Co* [ECF No. 22, Adv. No. 09–01592–EPK] (the "Preliminary Injunction Order"), enjoining the Debtor and Mr. King from withdrawing or otherwise using funds in their joint bank account at JP Morgan Chase up to a total sum of $33,422.66. The Preliminary Injunction Order also required the Debtor and Mr. King to turn over to the Trustee all funds in their joint account at JP Morgan Chase as of the date of the bank statement provided to the Trustee for the period ending April 6, 2009 with an ending balance of $18,562.59, pending final adjudication in the 2009 Adversary Proceeding.

After proper service of the summons and 2009 Complaint, the Debtor and Mr. King each failed to file a timely response to the 2009 Complaint. Upon motion of the Trustee, on July 9, 2009 the clerk entered defaults against the Debtor and Mr. King in the 2009 Adversary Proceeding.

On July 13, 2009, the Trustee filed her *Plaintiff's Emergency Motion to Hold the Defendants in Contempt of Court, to Require the Defendants to Turn Over Funds and for Other Sanctions* [ECF No. 42, Adv. No. 09–01592–EPK] (the "Motion for Contempt"), alleging that the Debtor and Mr. King were in contempt of Court for failing to turn over funds in the amount of $18,562.59 as previously ordered. The

Court held a preliminary hearing on the Motion for Contempt on July 16, 2009 and held an evidentiary hearing on the Motion for Contempt on July 30, 2009. Following the evidentiary hearing, on August 5, 2009 the Court entered its *Order Granting Plaintiff's Emergency Motion to Hold the Defendants in Contempt of Court, to Require the Defendants to Turn Over Funds and for Other Sanctions* [ECF No. 69, Adv. No. 09–01592–EPK] (the "Contempt Order"). Among other things, the Court found the Debtor and Mr. King in contempt of Court for failure to comply with the Court's Preliminary Injunction Order. The Court directed that the Debtor and Mr. King could purge themselves of contempt if they (1) turned over funds in the amount of $14,615.00 that they withdrew from their joint account on June 5, 2009, and (2) cooperated with JP Morgan Chase in turning over all remaining funds in the joint account within five days from entry of the order. The order further provided that if the Debtor and Mr. King failed to comply within the required time, the Trustee could file a motion seeking an order directing the United States Marshals Service to apprehend the Debtor and Mr. King to bring them before the Court for a determination of appropriate sanctions.

Prior to the evidentiary hearing on the Motion for Contempt, on July 24, 2009, the Debtor filed in the 2009 Adversary Proceeding a document construed by the clerk as an answer to the 2009 Complaint. The Debtor filed this document almost two weeks after the clerk had entered a default against the Debtor. Contemporaneously, the Debtor filed her *Motion to Amend Default* [ECF No. 61, Adv. No. 09–01592–EPK] in which the Debtor stated "I object to default because I am responding to the complaint," and to which she attached an additional copy of the document construed as her answer. Following a hearing on August 13, 2009, the Court construed the Debtor's Motion to Amend Default as a motion to vacate the clerk's entry of default against the Debtor, granted the motion, and vacated the entry of default against the Debtor. [ECF No. 82, Adv. No. 09–01592–EPK].

On August 10, 2009, the Trustee filed her *Motion for Default Final Judgment* [ECF No. 73, Adv. No. 09–01592–EPK], requesting a default judgment against the Debtor and Mr. King.

On August 12, 2009, the Trustee filed her *Plaintiff's Motion for Entry of Order Directing the United States Marshals to Apprehend the Defendants, Shirley and Homer King* (the "Motion to Apprehend") [ECF No. 77, Adv. No. 09–01592–EPK], requesting an order from the Court directing the United States Marshals Service to apprehend the Debtor and Mr. King and bring them before the Court to determine further sanctions with the aim of compelling the Debtor and Mr. King to turn over to the Trustee funds in the amount of $14,615.00 as previously ordered by the Court.

On August 14, 2009, Mr. King filed his *Motion to Amend Default* [ECF No. 80, Adv. No. 09–01592–EPK], attaching what appeared to be a response to the Contempt Order. The Court construed this document as a motion to vacate the clerk's default against Mr. King. On August 27, 2009, the Court held a hearing on Mr. King's Motion to Amend Default along with the Motion to Apprehend and the Trustee's Motion for Default Final Judgment. Following the hearing, the Court entered an order vacating the clerk's entry of default against Mr. King, denying the Trustee's Motion for Default Final Judgment as to both Defendants, and ordering Mr. King to file an answer to the 2009 Complaint no later than September 8, 2009. [ECF No. 87, Adv. No. 09–01592–

EPK]. The Court continued the hearing on the Motion to Apprehend to September 10, 2009.

Mr. King again failed to respond to the 2009 Complaint by the Court's deadline. On September 10, 2009, the Trustee filed her *Plaintiff's Verified Motion for Default Against Defendant Homer King* [ECF No. 92, Adv. No. 09–01592–EPK]. The clerk entered default against Mr. King on September 10, 2009. On that same day, Mr. King filed a document construed by the clerk as an answer to the 2009 Complaint [ECF No. 95, Adv. No. 09–01592–EPK]. This document was filed two days after the deadline set by the Court for Mr. King to respond to the 2009 Complaint.

On September 10, 2009, the Court held a pretrial conference in the 2009 Adversary Proceeding. In spite of the entry of a clerk's default against Mr. King, the Court set trial against both Defendants for September 29, 2009. The Court also denied the Motion to Apprehend.

On the scheduled date for trial in the 2009 Adversary Proceeding, September 29, 2009, the Debtor, Mr. King and the Trustee indicated that they had settled the matter. The Court continued the trial to October 5, 2009 to enable the parties to submit a consent final judgment consistent with their statements on the record on September 29, 2009.

On October 2, 2009, the Court entered the Consent Final Judgment awarding, *inter alia*, judgment in favor of the Trustee against the Debtor and Mr. King in the amount of $33,422.66 with interest as prescribed by law.

On December 16, 2009, the Trustee filed a *Motion for Writ of Execution* [ECF No. 113, Adv. No. 09–01592–EPK]. The clerk issued the writ that same day.

The Trustee's *Notice of United States Marshals Service Sale* (the "Notice of Sale") of certain real property owned by Mr. King located at 127 N.W. 5th Court, Boynton Beach, Florida 33435 (the "Real Property") was published in the Palm Beach Daily Business Review on February 25, 2010, March 4, 2010, March 11, 2010, and March 18, 2010. The Notice of Sale stated, in relevant part:

> By virtue of a Final Judgment dated October 02, 2009 and issued out of the United States District Court for the Southern District of Florida, notice is hereby given I will sell by public auction for cashier's or certified check, on 25th day of March, 2010 at 12:00 P.M. at the Palm Beach County Courthouse, Main Judicial Complex, 205 North Dixie Highway, West Palm Beach, Florida 33401 . . . .

On March 25, 2010, the Trustee levied on the Real Property by causing the United States Marshals Service to conduct a public auction of the Real Property. The public auction was held outside the Palm Beach County Courthouse. Mr. King was present and bid at the public auction. The Trustee was the successful bidder at that sale. Her bid was $5,000.00.

Five days after the auction sale, on March 30, 2010, the Debtor (and not Mr. King) filed a request for hearing in the 2009 Adversary Proceeding with regard to the sale of the Real Property [ECF No. 117, Adv. No. 09–01592–EPK]. The Court held a hearing on notice to the Debtor, Mr. King and others. The hearing was attended by the Debtor and counsel for the Trustee. Mr. King did not appear. During the hearing the Debtor requested that the Court order the Trustee to sell the Real Property to the Debtor or Mr. King, or order the Trustee to accept a payment plan. The Court ruled that it could not provide such relief. The Trustee agreed to provide the Debtor with notice of any re-sale auction of the Real Property.

On June 15, 2010, the Trustee filed her *Plaintiff's Motion for Entry of Order Ratifying Auction and Deeming the Bankruptcy Estate as the Owner of Real Property Pursuant to Federal Bankruptcy Rule 7069 and 28 U.S.C. § 3203* [ECF No. 120, Adv. No. 09–01592–EPK] (the "Ratification Motion"). In the Ratification Motion, the Trustee stated that the United States Marshals Service conducted an execution sale of the Real Property and that the Trustee placed the winning bid on the Real Property and purchased the Real Property for $5,000.00. The United States Marshals Service had not provided the Trustee with a deed to the Real Property and the Trustee sought, via the motion, an order confirming that the Real Property was held by the estate and ratifying the sale of the Real Property. After a hearing on July 15, 2010, in part because the law does not provide for court ratification of execution sales, the Court denied the Ratification Motion without prejudice to the Trustee seeking other appropriate relief. [ECF No. 124, Adv. No. 09–01592–EPK].

On July 21, 2010, the Debtor filed the *Motion to Dismiss and Return All Property to Defendants* [ECF No. 127, Adv. No. 09–01592–EPK] and, on July 26, 2010, the Debtor filed the *Notice for Motion to Avoid Judgment Lien* [ECF No. 128, Adv. No. 09–01592–EPK]. Both motions were signed only by the Debtor and not by Mr. King. With appropriate notice to the Debtor, Mr. King and others, the Court held a hearing on both motions on September 2, 2010. After making detailed findings and rulings on the record, the Court denied both motions.

On October 18, 2010, the Trustee filed the *Plaintiff's Emergency Motion to Allow the Trustee to Secure Real Property, Remain in Exclusive Control Over Real Property, and to Prohibit Shirley and Homer King from Entering Real Property and/or Interfering with the Trustee's Efforts to Administer Real Property* [ECF No. 138, Adv. No. 09–01592–EPK] (the "Motion to Secure"). The facts alleged in this motion are nearly identical to those that form the basis for the Amended Complaint in the present adversary proceeding. The Trustee stated that she held a deed to the Real Property issued by the United States Marshals Service. The Trustee stated that a prospective auctioneer to be retained by the Trustee to re-sell the Real Property went to the Real Property to change the locks. The Trustee further stated that the Boynton Beach police department, at the direction of the Debtor and Mr. King, required the prospective auctioneer to place Mr. King's original lock back on the Real Property and directed the prospective auctioneer to then vacate the premises. The Trustee requested an order: (1) providing the Trustee with all authority to secure the Real Property and remain in exclusive control over the Real Property; (2) allowing the Trustee and/or her agents, including the prospective auctioneer, to change the locks on the Real Property; (3) prohibiting the Debtor and Mr. King from entering the Real Property and/or interfering with the Trustee's efforts to administer the Real Property in furtherance of enforcing the writ of execution on the Real Property and the Trustee's Consent Final Judgment; and (4) allowing the Trustee to obtain the assistance of the United States Marshals Service to allow the Trustee to remove any persons, secure the Real Property, and enforce the Trustee's rights as to the Real Property as against any persons or agencies, including any non-federal law enforcement agency that interferes with the Real Property. The Motion cited no provision of federal or state law as the basis for the relief requested.

The Court held a hearing on the Motion to Secure on October 28, 2010. At the

hearing, the Court noted that the relief requested in the motion consisted of declaratory and injunctive relief not addressed in the original 2009 Complaint and that such relief typically requires the filing of an adversary complaint under Fed. R. Bankr.P. 7001. While the requested relief could be construed as a motion to enforce a writ of possession, the Trustee had not requested such a writ. Accordingly, the Court denied the Motion to Secure.

On October 29, 2010, the Trustee commenced the above-captioned adversary proceeding against the Defendants.

### Summary Judgment Standard

Fed.R.Civ.P. 56(a), made applicable to this matter by Fed. R. Bankr.P. 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir.1990) (citation omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* (*citing Anderson*, 477 U.S. at 252, 106 S.Ct. 2505).

### Analysis

The cross-motions for summary judgment presented here center on the execution sale of the Real Property. Mr. King argues that the execution sale was defective in several respects and that, accordingly, the deed issued by the United States Marshals Service to the Trustee following the execution sale is not valid. The Court must first determine whether the execution sale should be set aside. If the execution sale was valid and proper, then the Real Property was property of the bankruptcy estate at the time of the actions alleged in the Amended Complaint and remains so now. The Court will then address the Trustee's requests for damages and injunctive relief. If the execution sale was not valid and proper and the Court sets aside the execution sale, the Court will deny the Trustee's requests for injunctive relief. If the execution sale is void, then the Real Property never became property of the estate, there was no potential violation of the automatic stay, and the Trustee is entitled to neither damages nor injunctive relief. If the execution sale is voidable then, even if the Court sets aside the execution sale and quiets title to the Real Property in Mr. King, the Real Property was for a time property of the bankruptcy estate and Mr. King's actions with regard to the real property may still constitute violations of the automatic stay subjecting him to the Trustee's claim for damages. In such case, the Court will consider the Trustee's request for damages.

■ In the 2009 Adversary Proceeding, the Trustee obtained the Consent Judgment against the Debtor and Mr. King. The Consent Judgment is a money judgment. Fed.R.Civ.P. 69, made applicable to this adversary proceeding Fed. R. Bankr.P. 7069, provides the process by which the Trustee as judgment creditor can enforce a money judgment. A money judgment is enforced by a writ of execution unless the court directs otherwise and that the procedure on execution "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R.Civ.P. 69(a)(1). No federal statute applies in this case. Thus, the Trustee was required to follow the procedures of the State of Florida when executing on the Real Property.

Mr. King argues that the Trustee did not follow proper execution sale procedures in that (1) the sale was not held at least 30 days after the date of the first advertisement of the sale as required by Fla. Stat. § 56.21, and (2) the Notice of Sale failed to state a specific location at the Palm Beach County Courthouse where the sale would take place.

■ Fla. Stat. § 56.21 addresses the notice requirements for an execution sale. It provides, in relevant part:

Notice of all sales under execution shall be given by advertisement once each week for 4 successive weeks in a newspaper published in the county in which the sale is to take place. The time of such notice may be shortened in the discretion of the court from which the execution issued, upon affidavit that the property to be sold is subject to decay and will not sell for its full value if held until date of sale.... When selling real or personal property, the sale date shall not be earlier than 30 days after the date of the first advertisement.

Under Florida law, an execution sale must be set at least thirty days after the date of the first advertisement of the sale. Here, the date of the first advertisement was February 25, 2010. Thirty days from February 25, 2010 is Saturday, March 27, 2010. Fla. Stat. § 56.22 provides that sales of property under legal process shall take place on any day of the week except Saturday and Sunday. The earliest date on which the Real Property could be sold consistent with Fla. Stat. § 56.21 was Monday, March 29, 2010. The execution sale of the Real Property took place four days earlier on March 25, 2010.

Mr. King argues that the word "shall", as used in Fla. Stat. § 56.21 to provide that the sale date shall not be earlier than thirty days after the date of the first advertisement, requires strict compliance. Because the Trustee failed to comply with the thirty-day notice requirement, Mr. King argues, the sale must be set aside. The Court agrees.

■ Neither party has cited, and the Court's research has not revealed, a Florida case directly addressing whether the thirty day notice requirement in Fla. Stat. § 56.21 must be strictly applied. In *DeGregorio v. Balkwill*, the Supreme Court of Florida stated that "[w]hen interpreting statutes and discerning legislative intent, courts must first look at the actual language of the statute." 853 So.2d 371, 373 (Fla.2003). Generally, the word "shall" is given a mandatory connotation. *Id.* at 374. There is an exception: "When a particular provision of a statute relates to some immaterial matter, where compliance is a matter of convenience rather than substance, or where the directions of a statute are given with a view to the proper, orderly and prompt conduct of business merely, the provision may generally be regarded as directory." *Neal v. Bryant,*

149 So.2d 529, 532 (Fla.1962) (quotations omitted). On the other hand, "where the statute provides for the deprivation of a property right, the procedural requirements here in question cannot be regarded as an "immaterial matter" or a "matter of convenience rather than substance." " *Id.*

The Trustee points out that Fla. Stat. § 56.21 provides a method for reducing the four week advertising requirement and argues that because the statute allows for such reduction the thirty day notice provision should not be strictly applied. First, although logic leads one to conclude that the four week advertising requirement and the thirty day notice provision are closely related, it is unclear whether the time reduction provision applies to the thirty day notice period, which appears after the time reduction language in the text of the statute. Second, even if the time reduction provision is applicable to the thirty day notice provision, that period can only be shortened by court ruling after the filing of an affidavit to the effect that the property is subject to deterioration. Reading the statute as a whole, it appears that the Florida legislature intended that those seeking to sell property pursuant to a writ of execution must strictly comply with the thirty day notice requirement. *See Steward v. Moskowitz,* 5 A.3d 638, 650–52 (D.C.2010) (analyzing similar federal statute, analogizing it to tax sales of real property, and requiring strict compliance with notice requirements).

In Florida, execution sales and tax sales of real property both take place without judicial supervision. Thus, it is appropriate to look to Florida law addressing notice concerns in the tax sale context. The Supreme Court of Florida has indicated that the twenty days' notice required prior to the date of a tax sale is a vital component of the notice provision and must be strictly applied. *See Thacker v. Biggers,*

48 So.2d 750 (Fla.1950). A parallel analysis supports this Court's conclusion that the thirty day notice requirement in Fla. Stat. § 56.21 must be strictly applied.

The Trustee suggests that there is little difference between twenty-eight days and thirty days after the first advertisement of sale. The Trustee argues that there was no actual harm to Mr. King as a result of the fact that the execution sale took place a few days early. As noted above, the sale actually took place four days prior to the first date permitted under Florida statute. Under the circumstances of this case, there is no way for the Court to know whether the passage of those four days may have had a material impact on the outcome of the sale. Given the other concerns addressed below, to require Mr. King to prove that he was harmed by the shortness of time would place an impossible burden on him.

Because the execution sale of the Real Property did not take place at least thirty days after the date of the first advertisement of sale, the execution sale must be set aside.

■ Florida courts set aside execution sales when the sale results in an inadequate price for the subject property and the inadequate price is connected with or is shown to result from a mistake, accident, surprise, fraud, misconduct or irregularity upon the part of the purchaser or another person connected with the sale, with resulting injustice to the complaining party. *Arlt v. Buchanan,* 190 So.2d 575, 577 (Fla.1966); *Lawyers' Co-Operative Pub. Co. v. Bennett,* 34 Fla. 302, 16 So. 185, 188 (1894). Whether to set aside a sale under such circumstances is within the discretion of the trial court. *Long Beach Mortg. Corp. v. Bebble,* 985 So.2d 611, 613 (Fla. 4th DCA 2008) (foreclosure sale); *Bit–O–Sweden, Inc. v. Kittredge,*

566 So.2d 364, 365 (Fla. 5th DCA 1990) (sale under Florida Statutes § 56.21).

■ Here, in light of the low sale price obtained at the sale, the failure of the Notice to provide a particular location for the sale, and the occurrence of the sale less than thirty days after the date of the first advertisement, the execution sale must be set aside.

As previously noted, the execution sale took place four days prior to the first permissible sale date under Florida law. Even if the thirty-day notice requirement of Fla. Stat. § 56.21 does not require strict compliance, the Court may take into account the failure to provide a full thirty days of notice when considering whether there were irregularities in the sale process that resulted in or were connected with an inadequate sale price for the Real Property. This irregularity in the sale procedure weighs in favor of setting aside the execution sale in this case.

■ The Notice does not adequately identify the location of the sale sufficient to enable potential bidders to find the sale. The Notice provides, in relevant part:

> By virtue of a Final Judgment dated October 2, 2009 and issued out of the United States District Court for the Southern District of Florida,[2] notice is hereby given I will sell by public auction for cashier's or certified check, on 25th day of March, 2010 at 12:00 P.M. at the Palm Beach County Courthouse, Main Judicial Complex, 205 North Dixie Highway, West Palm Beach, Florida 33401. . . .

Under Florida law, the notice of an execution sale must indicate where the sale will take place. Fla. Stat. § 56.22 ("All sales of property under legal process shall take place at the time, date, and *place advertised in the notice*") (emphasis added). As Mr. King states in his affidavit in support of the King Motion, the "Main Judicial Complex of the Palm Beach County Courthouse is a large building with many floors, rooms, and other places where a public sale potentially could take place." [ECF No. 164, ¶ 2]. The Notice does not even state whether the sale was to incur inside or outside the courthouse. It does not state whether the sale would be in a particular room or near a particular architectural component of the building, such as the "South door." There was no guidance in the Notice to inform a potential bidder where to go on the date of the sale, other than to indicate the entire courthouse building. In his affidavit, Mr. King details the steps he took to locate the sale inside the courthouse. In the end, he was told by the Clerk of Court staff that all sales are done online and that they do not hold federal auctions at the Palm Beach County Courthouse. Mr. King states that after searching for the sale location inside the courthouse he proceeded to leave the courthouse and saw the Trustee's counsel, who he knew from hearings before this Court, outside of the building on the side near Dixie Highway. According to Mr. King's un-rebutted affidavit, even then there was nothing to indicate that a sale was about to proceed. "There was no table set up for a public sale, no signs indicating a public sale, and no loud speaker." [ECF No. 164, ¶ 3]. The only reason Mr. King found the sale was because he recognized counsel for the Trustee. Any other potential bidder likely would have

---

**2.** Mr. King also argues that the identification of the United States District Court rather than this Court as the source of the judgment should be taken into account in setting aside the execution sale. The Court sees no reason why the identity of the court issuing the judgment being executed upon would affect bidding at the sale, and gives no weight to this argument.

been unable to find the sale. The Trustee suggests that a potential bidder could have telephoned the Trustee's counsel at the number indicated in the Notice of Sale. This is not sufficient to negate the failure of the Notice of Sale itself to designate the location of the sale in a manner reasonably calculated to permit a potential bidder to find the sale.

Under Florida law, failure to comply with the procedural requirements of the execution sale process is not to be taken lightly.

> The trend of the law is to disregard technicalities. Yet, the publication of a proper notice of sale is more than a technicality. The purpose behind requiring publication of a notice of sale is that if the public at large knows of a forthcoming sale, there is more likelihood of the property being sold at a price which is reasonably commensurate with its full market value. At the very least, the notice should advise prospective bidders of the correct date, time, and place of the sale.

*Helinger v. Allen*, 352 So.2d 122, 124 (Fla. 2d DCA 1977). The irregularities in the sale procedure here weigh heavily in favor of overturning the execution sale of the Real Property.

The sale priced obtained for the Real Property is grossly inadequate. Only Mr. King and the Trustee bid at the sale. The Trustee was the successful bidder, with a bid of $5,000.00. The Trustee filed two appraisals by appraiser Mark L. Pelletier.[3] Mr. Pelletier first conducted an appraisal of the market value of the fee simple inter-est in the Real Property as of March 25, 2010, the date of the execution sale conducted by the United States Marshalls Service. Mr. Pelletier stated the market value to be $65,000.00. *Declaration of Mark L. Pelletier, Appraiser,* [ECF No. 138–1]. Subsequently, the Trustee filed the *Second Declaration of Mark L. Pelletier, Appraiser* [ECF No. 192] (the "Second Declaration"). In the Second Declaration, Mr. Pelletier states that his original $65,000 valuation was based on a typical marketing period of three to six months and normal sale conditions involving a willing seller. He was also asked to opine on the value of the Real Property assuming market exposure of thirty days or less, with advertising once a week for four consecutive weeks, consistent with a forced liquidation. In the Second Declaration, Mr. Pelletier stated the value of the Real Property as of March 25, 2010, under this forced liquidation scenario, as between $32,500.00 and $16,250.00. He further stated that his opinion of such value would not change with an assumption of market exposure of twenty-eight days with advertising once a week for four consecutive weeks, which matches the facts presented in this case.

The forced liquidation value of the Real Property is not relevant to the Court's analysis here. When determining whether to set aside an execution sale, Florida courts consider the relationship between the sale price obtained at the sale and the market value of the property at the time of the execution sale. *See Action Realty & Invs., Inc. v. Grandison,* 930 So.2d 674, 677 (Fla. 4th DCA 2006) (col-

---

3. In his affidavit, Mr. King states that he believes the Real Property is worth approximately $180,000. Mr. King does not state the date for this valuation. Given the context of the present motions the Court assumes Mr. King intended to state the value of the Real Property as of the date of the execution sale. Because the Court accepts the market value assigned to the Real Property by the Trustee, and finds that the sale price was not adequate in light of that market value, it is not material that Mr. King failed to designate a date for his valuation of the Real Property.

lecting cases); *Moore v. Dade Glass and Mirror Co.*, 357 So.2d 221 (Fla. 3d DCA 1978). The Court gives no weight to Mr. Pelletier's Second Declaration.

Assuming the market value assigned to the Real Property by the Trustee, which is $65,000, the Trustee's bid of $5,000 represents less than 8% of the value of the property. The Court was unable to find a Florida case where there were irregularities in the sale, the sale price was even close to this small a percentage of the property's market value, and the sale was upheld. The Trustee's winning bid of $5,000 is a grossly inadequate sale price for the Real Property.[4]

In a number of Florida decisions where sales have been set aside, the party requesting that the sale be overturned was a potential bidder that was prevented from bidding as a result of irregularities in the sale procedure. There are also cases where the judgment debtor challenged the sale and pointed to a particular potential bidder who was prevented from bidding in support of the challenge to the sale. Here, given the vague description of the location of the sale contained in the Notice of Sale, and the fact that the sale involves a modest single family home, it would be unreasonable to require Mr. King to come forward with an actual potential bidder who was left out of the sale process as a result of the irregularities outlined above. Indeed, in light of the lack of reasonable notice as to the location of the sale it seems extremely unlikely such a person

would become known to Mr. King. The Court will not require Mr. King to do the impossible. *See Kaecek v. Knight*, 447 So.2d 900, 901 (Fla. 2d DCA 1984) ("To require appellant to prove that the [irregularity] caused the lack of other bids may require appellant to virtually do the impossible.").

■■■■■ The Trustee argues that Mr. King is prevented from disputing the validity of the execution sale based on the doctrines of waiver, estoppel, unclean hands, and laches. The Trustee argues that Mr. King had actual notice of the execution sale, that he actively participated in the sale by placing a bid, that he failed to take any action to attempt to stop the execution sale, and that he failed to take any action after the execution sale to assert deficiencies in the Notice of Sale or raise objections until he filed his response to summary judgment in this adversary proceeding almost one year after the sale and after several hearings in this case.

■■■■■ "The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So.2d 1098, 1104 (Fla. 5th DCA 2006) (citations omitted). "Waiver may be implied by conduct, but that conduct must make out a clear case." *Id.* (citation omitted).

4. The Trustee recorded a copy of the Consent Judgment as a lien on the Real Property. The Trustee argues that the Court should take into account the Trustee's judgment lien on the Real Property in ascertaining whether the sale price was adequate in relation to the market value of the Real Property. It is true that Florida courts take into consideration liens on property subject to execution sale when such liens will survive transfer of title

as a result of the sale. A bidder taking subject to an existing lien would obviously take the lien into account when determining the amount to bid. Here, the Trustee is executing on the very judgment filed as a lien on the Real Property. That judgment would not continue to attach to the Real Property after sale and should not be considered by the Court in determining whether the sale price was adequate.

 The elements of equitable estoppel are: "(1) the party against whom estoppel is sought must have made a representation about a material fact that is contrary to a position it later asserts; (2) the party claiming estoppel must have relied on that representation; and (3) the party seeking estoppel must have changed his position to his detriment based on the representation and his reliance on it." *Id.* at 1103. "Estoppel rests on the premise that the party asserting the estoppel has acted in reliance upon the prior inconsistent conduct." *Id.* (citation omitted).

 "The clean hands doctrine 'applies not only to fraudulent and illegal transactions, but to any unrighteous, unconscientious, or oppressive conduct by one seeking equitable interference in his own behalf.' Nonetheless, a party asserting unclean hands 'must prove that he was injured in order for the unclean hands doctrine to apply.'" *Tribeca Lending Corp. v. Real Estate Depot, Inc.*, 42 So.3d 258, 261 (Fla. 4th DCA 2010) (internal citations omitted).

 The elements of laches are: "(1) conduct on the part of the defendant; (2) plaintiffs knowledge of the defendant's conduct and failure to file suit based on that conduct; (3) the defendant's lack of knowledge that the plaintiff would assert his rights by filing suit; and (4) injury or prejudice to the defendant if the plaintiff is allowed to file suit." *Encore Enters., Inc. v. Roberts Hotels Fort Myers, LLC*, 2011 WL 5357533, at *5, 2011 U.S. Dist. LEXIS 125618, at *14 (M.D.Fla. Oct. 31, 2011). Laches is "an omission to assert a right for an unreasonable and unexplained length of time under circumstances prejudicial to the adverse party." *Ticktin v. Kearin*, 807 So.2d 659, 663 (Fla. 3d DCA2001).

Here, even taking as true all allegations asserted by the Trustee with respect to Mr. King's actions or inaction, the Trustee has not met her burden of showing that waiver, estoppel, unclean hands, or laches bar Mr. King's claims and defenses in this adversary proceeding. Laches does not apply. A required element of laches is injury or prejudice to the opposing party. The Trustee has not alleged that the Trustee has or will suffer injury or prejudice if the sale is set aside. Unclean hands does not apply. The Trustee alleges no conduct on the part of Mr. King that lends itself to the unclean hands doctrine. Nor does the Trustee allege that she was injured. Estoppel does not apply. The Trustee does not allege that she was misled and detrimentally relied on any representation made by Mr. King. The evidence shows that Mr. King did attend and participate in the sale, at which he was "yelling to the Palm Beach County Sheriff's Deputies and other persons in the area that they were trying to steal [his] property from [him]." [ECF No. 164, ¶3]. From Mr. King's statement, it is obvious that Mr. King did not believe the property could or should be sold, a position he maintains today. Mr. King's attendance and participation in the sale do not exhibit a waiver of his right to bring an action to set aside the sale, as he was clearly opposed to the sale then and remains so now. None of the equitable doctrines argued by the Trustee prevent Mr. King from proceeding with his claims and defenses in this adversary proceeding.

In light of the grossly inadequate sale price and the irregularities in the sale procedure addressed above, the execution sale must be set aside. Because the Court finds that the execution sale must be set aside, the Trustee is not entitled to the injunctive relief requested in Count II of the Amended Complaint and the Trustee Motion will be denied.

Mr. King requests summary judgment on the Trustee's request for damages for Mr. King's alleged willful violation of the

automatic stay. In Count I of her Amended Complaint, the Trustee alleges that Mr. King interfered with the Trustee's efforts to secure the Real Property after the Trustee obtained title to the Real Property and that this constitutes a violation of the automatic stay under section 362(a)(3). The Trustee demands that Mr. King pay compensatory damages, punitive damages, costs and attorney's fees pursuant to sections 362(k), section 105, and the inherent power of the Court.

Mr. King argues that the Real Property was his at the time of the actions alleged in the Amended Complaint, and remains his, because the execution sale was not valid. In effect, Mr. King argues that, as a result of the irregularities discussed above, the execution sale is void rather than voidable. This is contrary to Florida law, which holds that a deed obtained as a result of a faulty sale is voidable and not void. *American National Bank v. Lau*, 268 So.2d 567 (Fla. 2d DCA 1972). Although title to the Real Property will be returned to Mr. King consistent with this order, at the time of the acts alleged in the Amended Complaint title was vested in the Debtor's bankruptcy estate and the asset was protected by the automatic stay. The Court must still consider whether Mr. King's actions alleged in the Amended Complaint constitute a willful violation of the automatic stay and, if, so whether the Trustee is entitled to damages.

The Trustee seeks damages under section 362(k), under section 105, and under the inherent power of this Court. The right to damages afforded under section 362(k) may only be claimed by "an individual injured by any willful violation of [the automatic stay]." 11 U.S.C. § 362(k). Because a bankruptcy trustee acts in a representative capacity on behalf of the estate, there is a split of authority as to whether the trustee is an "individual" within the meaning of section 362(k). *Bakst v. Baldwin (In re Baldwin)*, 2007 WL 4414870, at *3–4, 2007 Bankr.LEXIS 4287, at *9 (Bankr.S.D.Fla. Dec. 14, 2007). Courts that hold that the trustee is not an "individual" within the meaning of section 362(k) still may award damages under section 105, and the Trustee has requested damages under that provision as well as under the inherent power of this Court. If Mr. King willfully violated the automatic stay, the Trustee may seek damages against him. It is possible that the Trustee may also obtain punitive damages under section 105. *See In re WVF Acquisition, LLC*, 420 B.R. 902, 914–15 (Bankr. S.D.Fla.2009).

In the present case there remain genuine disputes as to material facts-whether Mr. King willfully violated the automatic stay and, if so, what damages may be awarded. "Although the definition varies somewhat from context to context, willfulness generally connotes intentional action taken with at least callous indifference for the consequences." *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir.1986). Other circuits find automatic stay violations willful if the violator (1) knew of the automatic stay and (2) intentionally committed the violative act, regardless of whether the violator specifically intended to violate the stay. *See Price v. United States*, 42 F.3d 1068, 1071 (7th Cir.1994) ("A 'willful violation' does not require a specific intent to violate the automatic stay."); *Citizens Bank of Maryland v. Strumpf*, 37 F.3d 155, 159 (4th Cir.1994) ("To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay."), *rev'd on other grounds*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *In re Goodman*,

991 F.2d 613, 618 (9th Cir.1993) ("A 'willful violation' does not require a specific intent to violate the automatic stay," but only that the defendant knew of the automatic stay and intended the acts that violated the stay) (internal citations omitted); *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292–93 (4th Cir. 1986) (Willful violation where contemnor "knew of the pending petition and intentionally attempted to repossess the vehicles in spite of it."). A review of the foregoing case law and similar decisions leads to the conclusion that one cannot be held liable for damages resulting from violation of the automatic stay with regard to property of the estate if one did not know that the property in question was in fact property of a bankruptcy estate.

In his affidavit, Mr. King states that he believed that his property rights were being violated by the Trustee when she attempted to secure the Real Property. It is obvious that Mr. King knew of the Debtor's ongoing bankruptcy case, the existence of the Consent Judgment against him, and the execution sale itself. While it seems unlikely, in light of the Court's denial of the Ratification Motion it is possible that Mr. King was unaware that the Real Property was, at the time of his actions, property of the bankruptcy estate and thus protected by the automatic stay. The Court notes that Mr. King was not present at several hearings resulting from documents filed by the Debtor relating to the sale of the Real Property. In cases where a willful violation of the stay is alleged, it is typically appropriate for the Court to have an opportunity to ascertain the credibility of the alleged violator. Such is the case here. Based on the evidence available to the Court in connection with the present summary judgment motions, the Court cannot determine whether Mr. King willfully violated the stay and, if so, what damages should be awarded. These facts remain in dispute and are material.

For the foregoing reasons, summary judgment is not appropriate on Count I of the Trustee's Amended Complaint and the King Motion will be denied to this extent.

Mr. King requests that the Court award him fees and costs pursuant to Fed. R. Bankr.P. 9011, section 105, and Fla. Stat. § 57.105. Mr. King does not allege sufficient facts to support relief under any of these provisions and such relief will be denied.

Accordingly, it is

ORDERED AND ADJUDGED that:

1. The Trustee Motion [ECF No. 56] is DENIED.

2. The King Motion [ECF No. 163] is GRANTED IN PART, with regard to Count II of the Amended Complaint [ECF No. 76] and Count I of defendant Homer King's counterclaim in this adversary proceeding [ECF Nos. 98 and 99], and DENIED IN PART to the extent it requests summary judgment in Mr. King's favor with regard to Count I of the Amended Complaint and to the extent that Mr. King requests an award of fees and costs under Fed. R. Bankr.P. 9011, section 105, and Fla. Stat. § 57.105.

3. The Court will enter partial judgment in favor of defendant Homer King, (a) setting aside the execution sale of the Real Property, (b) quieting title to the Real Property in Mr. King subject to all liens, encumbrances, claims and interests that may attach thereto under applicable law including, without limitation, the lien of the Consent Judgment, (c) directing the Trustee to execute and deliver a quitclaim deed conveying to Mr. King, without representation or warranty of any kind, all title held by the Trustee in the Real Property, and (d) terminating the preliminary

injunction issued in this adversary proceeding.